JEREMIAS MOLINAS *v*. COMMISSIONER OF CORRECTION
(14963)

PETERS, C. J., and CALLAHAN, BORDEN, BERDON, NORCOTT, KATZ and PALMER, Js.

Argued November 2—decision released December 27, 1994

*Edward T. Ricciardi*, assistant state's attorney, with whom, on the brief, was *John A. Connelly*, state's attorney, for the appellant (respondent).

*Christopher C. Sheehan*, deputy assistant public defender, for the appellee (petitioner).

PETERS, C. J. The principal issue in this appeal is whether a criminal defendant who is now indigent waived the right to challenge the constitutionality of his incarceration by having previously agreed to a sentence that includes a "committed fine" as part of a bargained-for guilty plea. The petitioner, Jeremias Molinas, filed a petition for habeas corpus, alleging, inter alia, that he was incarcerated solely because of his inability to pay a criminal fine, in violation of his rights to due process and equal protection.[1] The habeas court granted the petition, ordering the petitioner released on parole and remitting the balance of the fine.[2] The respondent, the commissioner of correction (commissioner), appealed from the judgment of the habeas court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We affirm.

The record discloses the following undisputed facts. In 1989, the petitioner pleaded guilty, as part of a plea bargain agreement with the state, to one count of possession of narcotics with intent to distribute in viola-

---

[1] The petitioner's third amended habeas petition, dated September 10, 1993, is in three counts. In count one, he asserts that his incarceration for inability to pay the fine violates the due process clause of the fourteenth amendment to the United States constitution and article first, § 8, of the Connecticut constitution. In count two, he asserts that this incarceration also violates the equal protection clause of the fourteenth amendment and article first, § 20, of the state constitution. In count three, the petitioner asserts that he was denied effective assistance of counsel in violation of the sixth and fourteenth amendments and article first, § 8, of the state constitution. The habeas court granted the motion to quash count three, and the petitioner has not challenged that decision on appeal.

[2] As of the date of the habeas hearing, the outstanding amount on the fine had been reduced to $16,520 due to credits the petitioner had received for the time served. After the petitioner had been paroled from the prison sentence, the state had credited twenty dollars against the outstanding balance of the fine for each day of the petitioner's continued incarceration, applying the rate codified at General Statutes § 18-50.

tion of General Statutes § 21a-278.[3] The trial court sentenced the petitioner to twelve years imprisonment, execution suspended after seven years, five years probation and a $20,000 fine.[4] As part of the sentence, the trial court stated that the "defendant shall stand committed for payment of that fine." Upon defense counsel's inquiry, the court confirmed that it had ordered a "committed fine."[5]

On March 23, 1993, the petitioner was paroled from his prison term, effective August 1, 1993. The petitioner

---

[3] General Statutes § 21a-278 (formerly § 19-480a) provides in relevant part: "PENALTY FOR ILLEGAL MANUFACTURE, DISTRIBUTION, SALE, PRESCRIPTION OR ADMINISTRATION BY NON-DRUG-DEPENDENT PERSON. (a) Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person one or more preparations, compounds, mixtures or substances containing an aggregate weight of one ounce or more of heroin, methadone or cocaine or an aggregate weight of one-half gram or more of cocaine in a free-base form or a substance containing five milligrams or more of lysergic acid diethylamide, except as authorized in this chapter, and who is not, at the time of such action, a drug-dependent person, shall be imprisoned for a minimum term of not less than five years nor more than twenty years; and, a maximum term of life imprisonment. The execution of the mandatory minimum sentence imposed by the provisions of this subsection shall not be suspended except the court may suspend the execution of such mandatory minimum sentence if at the time of the commission of the offense (1) such person was under the age of eighteen years or, (2) such person's mental capacity was significantly impaired but not so impaired as to constitute a defense to prosecution."

[4] The terms of the initial plea bargain called for the petitioner to plead guilty in return for a sentence recommendation by the state of twelve years imprisonment.

[5] No previously reported case in any Connecticut state court employs the term "committed fine." Federal regulations provide that "[i]n any case in which a prisoner shall have had a fine imposed upon him by the committing court for which he is to stand committed until it is paid or until he is otherwise discharged according to law, such prisoner shall not be released on parole or mandatory release until payment of the fine, or until the fine commitment order is discharged according to law under the regulations of the Bureau of Prisons. Discharge from the commitment obligation of any committed fine does not discharge the prisoner's obligation to pay the fine as a debt due the United States." (Emphasis added.) 28 C.F.R. § 2.7 (a) (1994); see also Solomon v. Elsea, 676 F.2d 282, 284 n.1 (7th Cir. 1982).

remained incarcerated, however, because he had not paid the fine.[6]

The petitioner subsequently filed this petition for habeas corpus challenging his continued incarceration. Following a full hearing on the habeas petition, the habeas court found that "the petitioner's failure to pay the fine results from his financial inability to do so rather than from a willful disregard of his duty to pay." In response to the commissioner's argument that the petitioner had waived any right to relief by agreeing to the "committed fine" when he entered the guilty plea, the court found that "[t]he transcripts of the petitioner's plea canvass and sentencing hearing are devoid of any mention that failure to pay the fine would extend the length of the petitioner's imprisonment. Nor does the record disclose that the petitioner was so advised of this possibility by his counsel. There was no discussion by the trial court with the petitioner that an indigent person cannot be incarcerated solely because he is unable to pay a fine nor that the petitioner was willing to give up that right in order to participate in the plea agreement. Also, his counsel made no reference, on the record, to off the record discussions with the petitioner regarding this waiver."[7] The habeas court

---

[6] The petitioner's probation records indicate that the board of parole released the petitioner "to Detainer ([$]20,000 committed fine)." In the habeas proceedings, the records supervisor at the Webster Correctional Institution testified that, following the board's decision, the petitioner would have been released on parole once the outstanding balance on the fine had been paid.

[7] Although the trial court specifically asked the petitioner whether he understood that, by entering a guilty plea, he would be waiving his rights against self-incrimination, to confrontation and to a jury trial, the court never mentioned the right not to be incarcerated on the basis of indigency. The entire discussion concerning the "committed fine" during the plea canvass consisted of the following exchange:

"The Court: Now, you understand that I have indicated to your lawyer that all things being equal, that I would impose a sentence in this case of twelve years suspended after eight years with a five year period of probation and a twenty thousand dollar committed fine. Do you understand that?

"The [Petitioner]: Yes, I do."

held, therefore, that the petitioner had not waived his right to challenge his incarceration for his nonwillful failure to pay the fine. Accordingly, the court ordered the petitioner released. In addition, the court remitted the balance of the fine.

The commissioner challenges the validity of the judgment of the habeas court on three grounds. First, as a legal matter, the commissioner argues that the court improperly concluded that the petitioner, by agreeing to a plea bargain that included a "committed fine" as part of the sentence, did not thereby waive whatever constitutional protections might apply to him because of his indigency. Second, as a factual matter, the commissioner argues that the habeas court improperly found the petitioner to be indigent. Third, as a remedial matter, the commissioner claims that even if the habeas court properly determined that the petitioner was entitled to be released, the court abused its discretion in remitting the entire outstanding balance of the fine. We disagree with each of these contentions.

I

In order to assess the commissioner's claim that the petitioner should be held to have waived his right to challenge the validity of his incarceration on the ground of indigency, it is important to review the underlying constitutional right on which the petitioner relies. In a series of cases evolving out of *Griffin* v. *Illinois*, 351 U.S. 12, 19, 76 S. Ct. 585, 100 L. Ed. 891, reh. denied, 351 U.S. 958, 76 S. Ct. 844, 100 L. Ed. 1480 (1956) (right of indigent criminal defendant to trial transcript at public expense), the United States Supreme Court has articulated constitutional principles that protect criminal defendants from being punished on account of their indigency. In *Williams* v. *Illinois*, 399 U.S. 235, 241, 90 S. Ct. 2018, 26 L. Ed. 2d 586 (1970), the court held that "an indigent criminal defendant may not be

imprisoned in default of payment of a fine beyond the maximum authorized by the statute regulating the substantive offense." The following term, the court held that " 'the same constitutional defect condemned in *Williams* also inheres in jailing an indigent for failing to make immediate payment of any fine, whether or not the fine is accompanied by a jail term and whether or not the jail term of the indigent extends beyond the maximum term that may be imposed on a person willing and able to pay a fine.' " *Tate* v. *Short*, 401 U.S. 395, 398, 91 S. Ct. 668, 28 L. Ed. 2d 130 (1971), quoting *Morris* v. *Schoonfield*, 399 U.S. 508, 509, 90 S. Ct. 2232, 26 L. Ed. 2d 773 (1970) (White, J., concurring). Even more significantly, in the context of a probation revocation hearing instigated because of the probationer's failure to pay a fine, the court subsequently held that "if the probationer has made all reasonable efforts to pay the fine or restitution, and yet cannot do so through no fault of his [or her] own, it is fundamentally unfair to revoke probation automatically without considering whether adequate alternative methods of punishing the defendant are available." *Bearden* v. *Georgia*, 461 U.S. 660, 668–69, 103 S. Ct. 2064, 76 L. Ed. 2d 221 (1983).[8]

---

[8] The United States Supreme Court has recognized that "[d]ue process and equal protection principles converge in the Court's analysis in these cases." *Bearden* v. *Georgia*, supra, 461 U.S. 665. The court illustrated this point in *Bearden*, in which the petitioner's probation had been revoked for failure to pay a fine, explaining that "[t]here is no doubt that the State has treated the petitioner differently from a person who did not fail to pay the imposed fine and therefore did not violate probation. To determine whether this differential treatment violates the Equal Protection Clause, one must determine whether, and under what circumstances, a defendant's indigent status may be considered in the decision whether to revoke probation. This is substantially similar to asking directly the due process question of whether and when it is fundamentally unfair or arbitrary for the State to revoke probation when an indigent is unable to pay the fine." Id., 665–66; compare *Williams* v. *Illinois*, supra, 399 U.S. 241 (employing equal protection analysis) with id., 259–66 (Harlan, J., concurring) (employing due process analysis). Because the habeas petition in this case contains both

Our own statutes and case law incorporate the same principles. "The impact of indigency on a criminal defendant's liability to pay a fine is codified in Practice Book [§§ 929, 931 and 932]." *State* v. *Johnson,* 228 Conn. 59, 61, 634 A.2d 293 (1993). These sections provide that "[n]o person shall be incarcerated as a result of his failure to pay a fine unless the judicial authority first inquires as to his ability to pay the fine." Practice Book § 929. Further, "[t]he judicial authority may, upon a finding that the defendant is able to pay the fine and that his nonpayment is wilful, order the defendant incarcerated for nonpayment of the fine." Practice Book § 931. Finally, "[a] defendant incarcerated under Sec. 931, for wilful nonpayment of a fine, shall be released when he pays the fine or when he is otherwise discharged according to law." Practice Book § 932.[9] These sections are "rooted in the constitutional principle that the state may not 'subject a certain class of convicted defendants to a period of imprisonment beyond the statutory maximum solely by reason of their indigency.' *Williams* v. *Illinois,* [supra, 399 U.S. 242]; see also *Bearden* v. *Georgia,* [supra, 461 U.S. 664]; *Moscone* v. *Manson,* 185 Conn. 124, 130, 440 A.2d 848 (1981); *State* v. *Zakrzewski,* 26 Conn. App. 716, 718, 603 A.2d 432 (1992)." *State* v. *Johnson,* supra, 61.

due process and equal protection claims, we need not decide whether our decision is more appropriately grounded in a due process or an equal protection analysis.

[9] At the time that this case arose, the rules of practice did not address whether a judicial authority was required to determine whether a defendant, who had been imprisoned under a sentence of incarceration and also ordered to pay a fine, had the ability to pay the fine as a condition of his continued incarceration after the period of incarceration had been served. Effective October 1, 1994, Practice Book § 932A now provides: "When a defendant has been sentenced to a term of imprisonment and ordered to pay a fine, the mittimus shall state that if the fine has not been paid by the time the sentence has been served the defendant may not continue to be incarcerated unless the judicial authority has found that the defendant is able to pay the fine and that the defendant's nonpayment is wilful."

In the circumstances of this case, unless the petitioner had effectively waived his rights, these constitutional principles required the petitioner's release from incarceration. The petitioner faced a situation analytically indistinguishable from that confronting the probationer in *Bearden*. Although the petitioner was never released from incarceration prior to the habeas proceedings, the parole board's decision to grant parole conferred upon the petitioner a significant liberty interest. See *Morrissey* v. *Brewer*, 408 U.S. 471, 482, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972) ("the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty"). The testimony at the habeas proceedings indicated, and the habeas court found, that following the board's decision the only barrier to the petitioner's release on parole was his failure to pay the fine and that this failure resulted solely from the petitioner's indigency. As the Ninth Circuit Court of Appeals recognized, prior to *Bearden,* in a decision relating to a committed fine imposed upon an indigent defendant, "[i]f, under the sentence imposed, the defendant, because of [his or] her financial inability to pay a fine, will be imprisoned longer than someone who had the ability to pay the fine, then the sentence is invalid . . . ." (Citations omitted.) *United States* v. *Estrada de Castillo*, 549 F.2d 583, 584 (9th Cir. 1976).

## II

The commissioner does not dispute the habeas court's characterization of the underlying constitutional principles that govern the incarceration of indigent defendants. His principal contention is that, by accepting a plea bargain that included a "committed fine," the petitioner definitively waived any constitutional right that he might otherwise have had to invoke indigency as a ground for his nonpayment of the fine. We are unpersuaded.

The principles that govern the waiver of a constitutional right are well established. For a waiver of a constitutional right to be effective, it must be made knowingly, voluntarily and intelligently.[10] "A waiver is defined as 'an intentional relinquishment or abandonment of a known right or privilege'. . . ." *Staton* v. *Warden*, 175 Conn. 328, 334, 398 A.2d 1176 (1978), quoting *Johnson* v. *Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938); *Talton* v. *Warden*, 171 Conn. 378, 385, 370 A.2d 965 (1976). "As the United States Supreme Court stated in *McCarthy* v. *United States*, 394 U.S. 459, 466, 89 S. Ct. 1166, 22 L. Ed. 2d 418 (1969), a waiver 'cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts.' " *Barlow* v. *Lopes*, 201 Conn. 103, 111, 513 A.2d 132 (1986).

In the context of a habeas challenge to a plea bargain, we have applied this standard to the review of the validity of an alleged waiver of the statutory right to appeal a separate conviction.[11] "Since a decision to waive one's statutory right to appeal cannot be said to be know-

[10] In his brief to this court, the commissioner asserted that the habeas court exceeded the scope of the petition when it inquired whether the petitioner's consent to the sentence at the plea canvass constituted a knowing and voluntary relinquishment of his right not to be incarcerated on the basis of indigency. According to the commissioner, the only issues properly before the habeas court were the due process and equal protection claims themselves. In raising these claims, however, the petitioner also necessarily raised by implication the claim that his rights to due process and equal protection had not been knowingly and voluntarily waived by his guilty plea. Furthermore, in his special defenses to the habeas petition, the commissioner himself directly raised the question of whether the petitioner could challenge his incarceration when he alleged that, at the time of the plea, the petitioner "understood" the sentence that was to be imposed.

[11] Although the United States constitution does not provide a defendant the right to appeal a criminal conviction; see *Griffin* v. *Illinois*, supra, 351 U.S. 19; *McKane* v. *Durston*, 153 U.S. 684, 687–88, 14 S. Ct. 913, 38 L. Ed. 867 (1894); we have held that "a defendant's statutory right to appeal is fundamental and must be 'jealously protected' . . . ." (Citations omitted.) *Barlow* v. *Lopes*, supra, 201 Conn. 109.

ingly, voluntarily and intelligently made if based upon a misapprehension as to the effect of this action . . . prior to the acceptance of an agreement to waive an appeal pursuant to a plea bargaining arrangement, care should be taken to inform the accused of the appellate rights to which he is entitled and to the consequences of this decision." (Citation omitted.) *Staton* v. *Warden*, supra, 175 Conn. 336. Before a defendant can be held to have waived his right to appeal a separate conviction, the record, therefore, must affirmatively disclose that the defendant was apprised of the possible merits of an appeal. *Barlow* v. *Lopes*, supra, 201 Conn. 110; *Staton* v. *Warden*, supra, 335.

We discern no reason for departing from this standard in the circumstances of this case.[12] To establish a valid waiver of the petitioner's claim of indigency, the commissioner would have had to have made an affirmative showing that the petitioner, at the time of the plea bargain, was apprised of, and understood, the contours of the constitutional right not to be incarcerated because of indigency and the consequences of a waiver of that constitutional right. Such an affirmative showing would require evidence that the petitioner had been advised that: (1) he had a constitutional right not to be incarcerated solely because of his inability to pay a fine; (2) he would waive that right by agreeing to the committed fine; (3) the effect of a waiver would be that he would not be released on parole until the fine was paid, regardless of the reason for its nonpayment;[13] (4) to pay off the committed fine, he would earn

---

[12] The petitioner has not argued that the constitutional rights at issue in this case can never be waived.

[13] Since a committed fine only prevents a convicted defendant from being granted early release when the fine has not been paid; see footnote 5; in no event could the period to be served for failure to pay the fine exceed the amount of time remaining on the defendant's prison sentence. Cf. *United States* v. *Estrada de Castillo*, supra, 549 F.2d 584. For example, had the petitioner in this case been found not to be indigent, his incarceration for failure to pay the $20,000 fine could not have continued beyond the three

credits during his incarceration, subsequent to his parole, in accordance with a disclosed rate schedule; and (5) he would retain the right to pay the outstanding balance of the fine at any time during his incarceration and could thereby remove his ineligibility for early release. In the absence of any such showing, the commissioner's categorical claim of waiver cannot be sustained.[14]

The requirements for a knowing, voluntary and intelligent waiver are not diminished by the fact that the alleged waiver occurred in the context of a plea bargained sentence. The plea bargain itself did not alert the petitioner to the right at issue because its alleged impact on his continued incarceration did not become apparent until several years later, when his parole became effective. See *State* v. *Johnson*, 29 Conn. App. 584, 589, 617 A.2d 174 (1992) ("a challenge to the fine imposed is not ripe for review until the failure to pay becomes the cause of any prolonged incarceration"), appeal dismissed, 228 Conn. 59, 634 A.2d 293 (1993); *State* v. *Zakrzewski*, supra, 26 Conn. App. 719. A guilty plea does not foreclose a petitioner from challenging any constitutional defect in the sentence that arises *subsequent* to the plea. Cf. *Tollett* v. *Henderson*, 411 U.S. 258, 267, 93 S. Ct. 1602, 36 L. Ed. 2d 235 (1973) (a defendant who has pleaded guilty "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred *prior* to the entry of the guilty plea" [emphasis added]).

years that remained on his seven year sentence at the time he was paroled from his prison term to the fine. Expiration of the prison term before the fine had been paid in full, however, while requiring that a defendant be released, would not automatically relieve the defendant of the obligation to pay or work off the fine. See part IV of this opinion.

[14] We need not decide whether, under other circumstances, a waiver of the constitutional rights at issue here may require additional disclosures beyond those we have specified today.

Similarly, a guilty plea itself does not establish an inference of waiver even though the guilty plea resulted in a sentence more favorable to the petitioner than he might otherwise have received. "[W]e recognize that the better the bargain, the more likely the petitioner would voluntarily have waived his right . . . . Such a bargaining process cannot, however, displace the requirement that the petitioner be fully informed so that his choice to bargain away his right . . . is made knowingly and intelligently." *Barlow* v. *Lopes*, supra, 201 Conn. 114. Any other rule would mean, as a practical matter, that no challenge to an alleged waiver arising out of a bargained-for guilty plea could ever be reviewed, because agreement to a plea bargain presupposes that the petitioner initially perceived the bargain to be favorable.

For these reasons, we reject the commissioner's claim that the petitioner has waived his right to assert his indigency as a ground for an order releasing him from further incarceration. The record supports the findings of the habeas court that the petitioner, in pleading guilty, did not knowingly, voluntarily and intelligently waive his right not to be incarcerated for his subsequent nonwillful failure to pay the fine.

### III

In the alternative, if we were to disagree with his argument that the petitioner waived his constitutional claim as a matter of law, the commissioner challenges the validity of the trial court's factual finding that the petitioner is indigent. Absent a showing of indigency, the petitioner would not be entitled to the benefit of the constitutional safeguards that the habeas court invoked on his behalf.

In making its finding of indigency, the habeas court observed: "When first incarcerated, the petitioner attempted to run a restaurant operation [that he

owned] from prison without success. The business went bankrupt. As a result of his conviction and incarceration, the petitioner lost his job at a Waterbury shelter. This case appears to the court to be one where the petitioner genuinely lacks the economic wherewithal to meet the fine, and not one where the petitioner has squandered resources, otherwise available to pay the fine, for other purposes. The petitioner's failure to pay the fine up to this point, even though payment would have resulted in his immediate release into the community on parole as early as some six months ago, strongly indicates to the court that the petitioner is truly unable to garner the funds necessary to pay the fine.''

The commissioner maintains that, in making this finding, the court improperly failed to evaluate the resources of the petitioner's family. In support of his position that the habeas court was required to look beyond the petitioner's own assets, the commissioner cites language from *Bearden* v. *Georgia,* supra, 461 U.S. 668, that a defendant must make ''all reasonable efforts'' to pay the fine. In particular, the commissioner emphasizes that the petitioner's family previously had raised sufficient funds to post a pretrial bond and pay private counsel.

Assuming the accuracy of the legal standard advocated by the commissioner, we are nonetheless persuaded that the habeas court's finding of indigency was adequately supported by the record. Nothing in the record of the proceedings before the habeas court indicates that it limited its inquiry to the petitioner's personal assets. Indeed, the last sentence of the finding quoted above strongly suggests otherwise. Furthermore, testimony at the habeas hearing suggested that the liquid assets that had been used by the family to post the pretrial bond no longer were available for payment of

the fine. In light of this record, we conclude that the habeas court's factual finding of indigency was not clearly erroneous.

We therefore conclude that the habeas court made a proper finding concerning the petitioner's indigency. Accordingly, we concur in its conclusion that the petitioner is entitled to be released from incarceration in accordance with the order of parole.[15]

## IV

Lastly, we address the commissioner's argument that, even if the petitioner was entitled to be released, the habeas court improperly remitted the outstanding balance of the petitioner's fine. The commissioner maintains that the court's decision to release the petitioner from further incarceration did not require the court also to remit his fine, and that the court's decision to do so was an abuse of its discretion.

We agree with the commissioner that the constitutional violation found by the habeas court did not compel the remedy of remission. The right identified in the *Bearden* line of cases protects only against incarceration on the basis of indigency. The " '[s]tate is not powerless to enforce judgments against those financially unable to pay a fine.' " *Bearden* v. *Georgia*, supra, 461 U.S. 672; *Tate* v. *Short*, supra, 401 U.S. 399; *Williams* v. *Illinois*, supra, 399 U.S. 244. The United States Supreme Court has, for example, sanctioned the use both of extensions of the time period for payment and of sentences of community service in lieu of payment as permissible means by which the state may enforce its penological interests against indigent criminal defendants. See *Bearden* v. *Georgia*, supra, 672.

---

[15] Accordingly, we do not reach the petitioner's assertion that the judgment of the habeas court could also be affirmed on the alternate ground that the fine initially imposed by the trial court was not authorized under the relevant statutes. See General Statutes §§ 21a-278, 53a-41 and 53a-44. We note that the petitioner failed to raise this claim in the habeas court.

The habeas court was empowered, nonetheless, to remit the fine if it judged that "such course will tend to the reformation of offenders or the furtherance of the ends of justice." General Statutes § 54-74. Although the habeas court did not explain why it decided to remit the fine,[16] the evidence in this case established that the petitioner had been incarcerated for a period of almost eight months after he should have been released on parole.[17] In light of that factual background, and the commissioner's apparent failure to propose alternate sanctions to the habeas court, we conclude that the habeas court did not abuse its discretion by deciding to remit the fine.

The judgment is affirmed.

In this opinion the other justices concurred.

[16] The commissioner did not avail himself of the opportunity to file a motion for articulation. Practice Book § 4051.

[17] The effective date of the petitioner's parole was August 1, 1993. The petitioner was not released, however, until after the Appellate Court refused to stay the habeas court's judgment in late March, 1994.