# United States Court of Appeals
## For the First Circuit

No. 05-1735

UNITED STATES OF AMERICA,

Appellee,

v.

THOMAS GAFFNEY,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. William E. Smith, U.S. District Judge]

Before

Lynch, Circuit Judge,
Siler,* Senior Circuit Judge
and Lipez, Circuit Judges.

   Tamara A. Barney, with whom MacFadyen, Gescheidt & O'Brien was
on brief, for appellant.
   Donald Lockhart, with whom Robert Clark Corrente, United
States Attorney, and Stephen G. Dambruch, Assistant United States
Attorney, were on brief, for appellee.

December 1, 2006

*  Of the Sixth Circuit, sitting by designation.

**LIPEZ**, <u>Circuit Judge</u>. Appellant Thomas Gaffney was sentenced to a term of imprisonment of 200 months after pleading guilty to three counts stemming from a conspiracy to distribute, and the distribution of, cocaine base. He now claims that his conviction and sentence should be vacated because the district court wrongly denied him the opportunity to obtain new counsel before entering his plea. Although appellant characterizes the court's action as either the denial of the counsel of his choice or the denial of a request for substitute counsel in violation of the Sixth Amendment, we view the court's action as a denial of a request for a continuance of a change of plea hearing, sought by defendant to explore the possibility of hiring a new attorney. Thus viewed, we conclude that the denial of that continuance request was not an abuse of discretion. We therefore affirm.

**I.**

Appellant Gaffney and a co-defendant, James D. Barr, were charged by complaint in October 2004 with conspiring to distribute and the distribution of crack cocaine. After court-appointed attorneys handled the initial appearance and detention hearings, Gaffney and Barr hired private counsel. A grand jury returned a three-count indictment against Gaffney in November 2004, and the government filed an information alleging that he had a prior felony drug conviction which would trigger a mandatory minimum ten year sentence. On December 17, 2004, Gaffney and his attorney, Thomas

-2-

Connors, signed a written plea agreement in which Gaffney agreed to plead guilty on all three counts.  Barr signed a similar agreement.

At a joint plea hearing on December 27, 2004, Edward J. McEnaney, an associate of Connors, represented Gaffney.  Counsel for both defendants expressed their clients' concern about going forward with their guilty pleas because they feared that their prior convictions might dramatically increase their sentences under the career offender provision of the sentencing guidelines.[1]  Noting that this issue "has a serious impact on the potential penalties involved in this case," the court granted a two-day continuance to allow the defendants additional time to get a "clearer picture of what it looks like for you in the event you decide to plead guilty."  The court also arranged a meeting between counsel and the probation officer for the next day.  The court repeatedly warned defendants that "evaluations done by the Government are only estimates"; that they are "not binding"; and that the court itself would determine the prior convictions' effects under the guidelines.  The court asked both defendants if they understood these warnings and they replied that they did.

---

[1] Gaffney faced a mandatory minimum ten year sentence based on the charges contained in the criminal complaint filed against him on October 8, 2004.  However, if his previous convictions caused him to be classified as a career offender under the sentencing guidelines, he would be subject to a minimum guidelines sentence of 262 months.

When the hearing resumed two days later, the court noted that both Gaffney and Barr had informed the court prior to the hearing that they were dissatisfied with their counsel and asked counsel for an update. McEnaney, again serving as counsel for Gaffney, responded that his client "had a problem" with the mandatory minimum sentence that would result from his likely classification as a career offender. Counsel continued: "he is interested in hiring another counsel. He does not believe that I've done everything, nor Mr. Connors . . . that we've done everything on his behalf to help him." Counsel concluded that we "have no alternative but to ask on his behalf for an extension of time . . . so he may meet with another counsel and someone who he may have more confidence in."

The court then asked to hear directly from the defendants about what "they think [counsel] have not done for them, because it strikes me that this is nothing more than a play for additional time . . . ." Gaffney responded: "Well, your Honor, first of all, my lawyer, the one that was paid to represent me ain't even here. He's on vacation." Gaffney continued: "I don't got nothing on my case. I don't got one piece of paper." Gaffney then contended that, without this paperwork, he had been unable to look up cases like his in the law library. The court questioned Gaffney extensively regarding his complaint about the missing paperwork, taking particular care to ascertain that Gaffney was familiar with

-4-

both the indictment and the plea agreement. Gaffney acknowledged that his lawyers had read both to him.

After some consideration, the court declined to grant a continuance of the change of plea hearing to allow Barr and Gaffney to obtain alternative counsel. Having heard now from both counsel and defendants, the court reiterated its opinion that the defendants were "asserting dissatisfaction with [their] attorneys in order to try to get some more time." The court also found that defendants' "dissatisfaction here is not with your attorneys. It's with what your attorneys are telling you." The court added: "I haven't heard anything that indicates to me that they're not representing you effectively." He also commended counsel for "their effort to get you more time in order to further investigate [the effect of the prior convictions on sentencing]." He noted that "you don't usually get that extra time, but I gave it to you so you . . . could be as informed as possible . . . [b]ut now you've been informed of that. You understand what you're facing here." The court then offered the men three choices: plead guilty, plead not guilty and proceed to trial with present counsel, or represent themselves. The court also offered counsel an opportunity to move to withdraw; neither counsel did. Gaffney then pled guilty on all counts.

During the plea colloquy, Gaffney confirmed that his lawyers had read the indictment and plea agreement to him. The

court asked Gaffney: "Putting all the issues of time aside, do you have any reason to feel that you haven't gotten good advice and good counsel from your attorneys here?"  Gaffney responded: "no." The court accepted Gaffney's guilty plea.

Subsequently, the court conducted three separate sentencing hearings to resolve Gaffney's challenges to the calculations proposed by the government.  Gaffney was represented by Connors at each of these hearings.  The court ultimately imposed a term of imprisonment of 200 months.  Although he was classified as a career offender based on his prior convictions, Gaffney received a three-level reduction for acceptance of responsibility and his ultimate sentence was more than five years less than the minimum guidelines term.

On appeal, Gaffney argues that the district court violated his Sixth Amendment right to counsel by denying a request for counsel of his choice or by denying a motion for substitution of counsel.  In response, the government asserts that Gaffney's decision to plead guilty following his colloquy with the trial court waived any claim for the deprivation of constitutional rights that occurred before the plea.  See Tollett v. Henderson, 411 U.S. 258, 267 (1973). Alternatively, the government argues that Gaffney never asked for substitution of counsel or counsel of his choice, but instead sought a continuance of the change of plea hearing to explore the possibility of hiring another attorney.  The government

-6-

insists that the court did not abuse its discretion in denying that request.

## II.

**A.      Waiver**

In <u>Tollett</u>, the Supreme Court held that a defendant who pleads guilty unconditionally waives all "independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."  411 U.S. at 267; <u>United States</u> v. <u>Cordero</u>, 42 F.3d 697, 699 (1st Cir. 1994).  The government contends that <u>Tollett</u> is applicable here and urges us to deny Gaffney's appeal on that basis.  We decline to do so.[2]

---

[2] This court has "assiduously followed the letter and spirit of <u>Tollett</u>, holding with monotonous regularity that an unconditional guilty plea effectuates a waiver of any and all independent non-jurisdictional lapses that may have marred the case's progress up to that point . . .." <u>Cordero</u>, 42 F.3d at 699.  Although not all of these cases expressly apply the <u>Tollett</u> holding, we have ruled that a guilty plea waives an appeal based on: claims of insufficient evidence of an interstate commerce nexus, <u>United States</u> v. <u>Cruz-Rivera</u>, 357 F.3d 10, 14 (1st Cir. 2004); a Rule 16 discovery violation claim, <u>United States</u> v. <u>Rodriguez-Castillo</u>, 350 F.3d 1, 3-4 (1st Cir. 2003); a <u>Kastigar</u> claim based on the Fifth Amendment, <u>United States</u> v. <u>Lujan</u>, 324 F.3d 27, 30 (1st Cir. 2003); a claim based on a so-called "jurisdictional" element of a criminal statute, <u>United States</u> v. <u>Gonzalez</u>, 311 F.3d 440, 442-44 (1st Cir. 2002); a suppression claim based on a federal statute, <u>United States</u> v. <u>Valdez-Santana</u>, 279 F.3d 143, 145-46 (1st Cir. 2002); a Speedy Trial Act claim, <u>United States</u> v. <u>Gonzales-Arimont</u>, 268 F.3d 8, 11-13 (1st Cir. 2001); an extradition claim, <u>United States</u> v. <u>Torres-Gonzales</u>, 240 F.3d 14, 16 (1st Cir. 2001); a constitutional challenge to a criminal statute, <u>United States</u> v. <u>Martinez-Martinez</u>, 69 F.3d 1215, 1224 (1st Cir. 1995); a Fourth Amendment suppression claim, <u>Cordero</u>, 42 F.3d at 699; a statute of limitations claim, <u>Acevedo-Ramos</u> v. <u>United States</u>, 961 F.2d 305, 307-09 (1st Cir. 1992); and a challenge to the voluntariness of a confession, <u>United States</u> v. <u>Wright</u>, 873 F.2d 437, 442 (1st Cir.

The Court reasoned in Tollett that a guilty plea "represents a break in the chain of events which has preceded it in the criminal process," 411 U.S. at 267, and reflects a defendant's decision to leave behind claims of constitutional error in an effort to expeditiously resolve the criminal proceedings against him. Here, defendant expressed dissatisfaction with his attorney at the change of plea hearing itself and then entered his guilty plea immediately after the court denied his request for time to explore the possibility of retaining different counsel. Arguably, the plea was intertwined with the alleged constitutional violation in a fashion that differs from many of the precedents applying Tollett. However, we find it unnecessary to decide whether Gaffney's complaint is indeed an "independent claim" waived by Tollett, or whether it is so intertwined with the plea itself that it evades Tollett's strictures. Instead, we conclude that Gaffney's claim for relief under the Sixth Amendment is otherwise deficient.

**B.        Identifying the Nature of the Motion**

In analyzing Gaffney's claim for relief, we must first determine the nature of Gaffney's motion at the December 29 plea hearing. While the government argues that Gaffney simply sought a continuance of the change of plea hearing, he says that the court either denied his motion for substitution of counsel or denied him

_____

1989).

his "choice of counsel" within the meaning of United States v. Gonzalez-Lopez, 126 S. Ct. 2557 (2006).[3]   After reviewing the transcript of the change of plea hearing, we conclude that appellant was requesting neither substitution of counsel nor insisting on his choice of counsel within the meaning of Gonzalez-Lopez.   Instead, we agree with the government that Gaffney wanted more time to consider securing alternative counsel.

Gonzalez-Lopez states that the "Sixth Amendment provides that in all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." Id. at 2561 (quoting U.S. Const. amend. VI) (internal quotation marks and alteration omitted).   It then emphasizes that "an element of this right is the right of a defendant who does not require appointed counsel to choose who will represent him," and specifies further that "a defendant should be afforded a fair opportunity to secure counsel of his own choice."   Id. (internal quotation marks omitted) (quoting Powell v. Alabama, 287 U.S. 45, 53 (1932)).

---

[3]In Gonzalez-Lopez, defendant had retained private counsel who was present and prepared to try the case; however, the trial court erroneously denied counsel admission pro hac vice.   Instead, defendant was represented by local counsel, also privately retained.   On appeal, the Eighth Circuit reversed defendant's conviction and rejected the government's argument that violation of defendant's Sixth Amendment right was subject to harmless error review.   The Supreme Court affirmed, stating that "the Sixth Amendment right to counsel of choice . . . commands, not that a trial be fair, but that a particular guarantee of fairness be provided--to wit, that the accused be defended by the counsel he believes to be best."   126 S. Ct. at 2562.

However, the facts of this case differ significantly from those in Gonzalez-Lopez, where defendant's privately retained counsel was present in the courthouse and ready to try the case but was erroneously prevented by the trial court from doing so. There was no comparable denial here of Gaffney's choice of privately retained counsel.

In addressing Gaffney's companion claim that the court violated his Sixth Amendment right by denying his motion for substitution of counsel, we must set forth some additional principles of Sixth Amendment law. Although "representation by counsel is a right of the highest order," United States v. Proctor, 166 F.3d 396, 402 (1st Cir. 1999), the right to choose one's own counsel is not absolute. It is well established that "the essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." Wheat v. United States, 486 U.S. 153, 159 (1988). In particular, the right to choose one's counsel must be balanced against "the fair, efficient and orderly administration of justice . . . [and] cannot be manipulated to delay proceedings or hamper the prosecution." United States v. Panzardi-Alvarez, 816 F.2d 813, 816 (1st Cir. 1987). Indeed, "only an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to the assistance of counsel."

-10-

<u>Morris</u> v. <u>Slappy</u>, 461 U.S. 1, 11-12 (1983)(internal quotation marks omitted).

Turning to the specifics of Gaffney's substitution of counsel claim, we first note that his claim differs from the usual substitution of counsel claim in which a defendant with court appointed counsel seeks the court's substitution of another appointed attorney. Gaffney retained his attorney privately. He was not even asking the court to substitute a court appointed attorney for his privately retained counsel. Instead, Gaffney was asking for more time to explore the possibility of finding another privately retained attorney to replace his current one. At most, this request was preliminary to a formal request for substitution of counsel which would involve several steps. In conjunction with filing a motion for substitution of counsel, Gaffney would have to fire his present attorney, hire a new one, and cause his former attorney to move to withdraw. None of these steps were taken here. According to Rule 1.17 of the Rhode Island Disciplinary Rules of Professional Conduct, which applied to Gaffney's attorney, an attorney is required to withdraw if discharged by his client.[4]

The record indicates that Gaffney's attorney never filed a motion to withdraw. It is equally clear from the record that

---

[4] The motion to withdraw is linked to a motion for substitution of counsel. It implicates both the lawyer's ethical duty to respect a client's autonomy and the court's responsibility for maintaining expeditious proceedings.

Gaffney had not retained a substitute attorney. Without these indicia of a motion to substitute one privately retained counsel for another, the court had no basis for treating Gaffney's request for a delay in the change of plea hearing as a motion for substitution of counsel.

In addition, the only explicit request made by either appellant or his counsel was for "an extension of time if the Court sees fit so [Gaffney] may meet with another counsel." His attorney added that Gaffney "should be afforded the right to at least meet with somebody else and be advised by another attorney." Understanding from Gaffney's actions and these statements that Gaffney and his counsel were requesting a continuance of the change of plea hearing, the court replied in kind, stating that it had not heard "anything that convinces me that I should grant a motion to withdraw and grant you a continuance to obtain new counsel."

We conclude that the court fairly viewed the request of Gaffney and his attorney as a request to continue the change of plea hearing so that Gaffney could explore the possibility of hiring another attorney. However, this characterization of Gaffney's request as one for a continuance does not mean that such a request could not have constitutional implications under the Sixth Amendment. As noted in Powell, the Sixth Amendment right to counsel requires that "a defendant should be afforded a fair opportunity to secure counsel of his own choice." 287 U.S. at 53.

In essence, Gaffney argues that the denial of his continuance request meant that he did not have a fair opportunity to secure counsel of his own choice. As we will explain, there is no basis for that claim.

## C.        Denial of the Motion for Continuance

We evaluate the trial court's denial of Gaffney's motion for a continuance for abuse of discretion. See United States v. Allen, 789 F.2d 90, 92 (1st Cir. 1986). Here, the court extensively investigated Gaffney's concerns, questioning Gaffney's attorney, inviting Gaffney to speak for himself, and granting Gaffney a second opportunity to address the court after the court declared its preliminary findings. We describe the particulars.

The district court first questioned Gaffney's counsel. McEnaney indicated that Gaffney felt his counsel had not done "everything on his behalf to help him"; Gaffney "had a problem with the ten-years sentence" and was concerned with the effect of his prior convictions on sentencing. Having found nothing of sufficient particularity in this response, the court turned directly to Gaffney.

Gaffney first expressed frustration at Connors' absence from the plea hearing. Having ascertained from McEnaney that Connors was, in fact, ready to try the case, the court assured Gaffney that his lawyers were prepared to go to trial and explained that McEnaney's substitution for Connors "doesn't mean that Mr.

-13-

Connors is not prepared to try this case. Lawyers help each other out in this way all the time. It's not a reason to fire your lawyer and hire somebody new and delay the trial date."

Gaffney also complained that he had no paperwork on his case. The court probed this complaint in a lengthy colloquy:

THE COURT: So you think that your lawyer should have brought you some papers or something?

MR. GAFFNEY: Papers on my case. I don't got nothing on my case saying – I don't even got what I'm charged with. I don't even got that where I'm at. Everytime he comes out he brings his paperwork. He says, 'I'm going to bring yours next time. They never faxed it to me. . . .'

THE COURT: Okay. All right. You've had a chance to review the indictment against you, right? The written charge against you? You've seen that, haven't you?

MR. GAFFNEY: Yeah, they read it to me in court . . .

THE COURT: Okay. And the plea agreement, you signed the plea agreement?

MR. GAFFNEY: Yeah, he read –- he didn't even read that. They read that to us. He said 'You could trust me.'

THE COURT: Excuse me? I didn't understand that.

MR GAFFNEY: When they came up with the plea agreement, we didn't read it. They read it to us. And he said, 'You could trust me.' I'm thinking he's telling me, yeah, you signed up for ten years. Then we come to court, now it's 20.

After hearing from the government's attorney, the court concluded: "I haven't heard anything that convinces me that I

-14-

should grant a motion to withdraw[5] and grant you a continuance to obtain new counsel. Because the information is going to be exactly the same with the new lawyer." The court then granted Gaffney's request to address the court a second time. Gaffney again complained of Connors' absence and his lack of paperwork, lamenting that he "could have went to the law library, looked up similar cases to mine. . . . I didn't get a chance to do that. My lawyer didn't do that for me." The court responded that looking up similar cases "might make you feel a little better, but it isn't going to make the difference." Gaffney then complained that he had "only been locked up for two months, and I'm already going to trial. . . . I feel like you are rushing me into . . . signing my life away." Indeed, Gaffney repeatedly made clear his unhappiness with the pace of events. Allowed to address the court again, he said: "Your honor, I feel like you are . . . forcing me into . . . going to trial. I don't want to go to trial. I just don't want my lawyer." When the court invited counsel to state "any reason why this matter should not go to trial next week," Gaffney intruded with another insistence that "I don't want to go to trial." The court's lengthy and thorough inquiry of Gaffney got to the bottom of his unhappiness with his attorney. The problem was not his attorney. Instead, Gaffney did not like the unpleasant message

---

[5] As noted, no motion to withdraw was ever filed.

about his sentencing exposure, and he did not like the rapid movement toward trial.

Moreover, the record indicates that Gaffney was communicating with his lawyers before he signed the plea agreement, before the December 27 hearing, and during the two days before the December 29 hearing. In addition, the absence of any motion to withdraw by Gaffney's counsel and subsequent events also belie any failure of communication between Gaffney and his counsel.

The court twice mentioned that counsel had not filed a motion to withdraw, indicating that "if counsel files such a motion, I'll hear it," and noting that "these lawyers are professionals." The court added: "if either of them felt . . . they were not ready to go to trial, they would – they have an ethical duty to tell me that, and I'll deal with it. But I don't have any reason to believe that." From counsel's perspective and from the court's, there apparently was no communication problem between attorney and client precluding continued representation and thus no justification for granting a continuance.

## III.

In arguing that the district court abridged his Sixth Amendment right to counsel, defendant tried to characterize his motion to continue the change of plea hearing as either a motion to exercise his choice of counsel or as a motion for substitution of counsel. For the reasons stated, we have concluded that those

-16-

characterizations are inaccurate. Instead, Gaffney simply sought a continuance of his change of plea hearing to explore the possibility of hiring new counsel. Although such a request for a continuance to seek substitute counsel could implicate the Sixth Amendment, Gaffney's claim has no such constitutional dimension. Gaffney chose Connors as his counsel from the outset. He communicated with both Connors and McEnaney throughout the period leading to his plea hearing, and he was advised of the nature of the charges against him and the substance of the plea agreement that he signed. Based on its extensive investigation into Gaffney's dissatisfaction with counsel and Gaffney's steadfast insistence that he wanted to avoid a trial and plead guilty, the district court reasonably determined that Gaffney's unhappiness related almost entirely to the pace of events and to the hard message that counsel was delivering rather than to any aspect of counsel's performance. The court also reasonably determined that this message would not change if Gaffney secured new counsel. Gaffney's attorney never filed a motion to withdraw, and no alternative counsel prepared to take over the case was ever identified.

In these circumstances, the court properly denied the request for a continuance. Accordingly, we **affirm** the judgment of the district court. So ordered.