Hillsborough-northern judicial district
No. 2009-801

### Danien Brousseau

v.

### Superintendent, Hillsborough County House of Corrections

Argued: May 13, 2010
Opinion Issued: June 16, 2010

*Richard Guerriero*, public defender, of Concord, on the brief and orally, for the petitioner.

*Michael A. Delaney*, attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

DALIANIS, J. The petitioner, Danien Brousseau, appeals the order of the Superior Court (*Smukler*, J.) denying his petition for a writ of habeas corpus. We affirm.

The record reveals the following facts. On February 9, 2009, the petitioner was arrested and charged with two felony counts of receiving stolen property, *see* RSA 637:7, :11 (2007), and five misdemeanor charges: possession of burglary tools, *see* RSA 635:1, V (2007); unauthorized use of a propelled vehicle, *see* RSA 634:3 (2007); conduct after an accident, *see* RSA 264:25 (2004); resisting arrest or detention, *see* RSA 642:2 (Supp. 2009); and disobeying a police officer, *see* RSA 265:4 (2004). A bench trial for the misdemeanor charges was scheduled in Manchester District Court for April 27, 2009. On that day, the parties negotiated a plea agreement pursuant to which the State agreed to *nol pros* the possession of burglary tools charge, and the petitioner agreed to plead *nolo contendere* to three misdemeanors (resisting arrest, conduct after an accident, and disobeying an officer) and to a violation (operating without a license). As part of his plea, in addition to other punishments, the petitioner agreed to pay a $500 fine. After reviewing an acknowledgement and waiver of rights form with counsel, the petitioner signed it and appeared in district court for sentencing.

As the district court was reviewing the terms of the plea agreement, the following exchange occurred:

> THE COURT: All right, for the record, there are a plethora of charges in front of the Court. . . . [W]ith regard to [] disobeying a police officer, [the plea agreement is for] 12 months in the House of Corrections, ten months suspended for two years and the condition of good behavior [and a] $500 fine. How would that be paid?

> MS. MELONE: Your Honor, [the petitioner is] going to be requesting time to pay it, because he's been incarcerated.

> THE COURT: Well, I'm disinclined to accept a negotiated plea on that basis. . . . [P]eople have to be able to perform on their plea,

if they wish to have that. So if what you're telling me is that you want to try this case, I guess . . . we'll try it.

MS. MELONE: Your Honor, may I have a moment with my client?

THE COURT: Yes.

MS. MELONE: Your Honor, my client — while we maintain that he's entitled to time to pay, he's opting to serve the fine off to permit the Court — at its discretion — to go forward with the plea today.

THE COURT: All right.

. . . .

THE COURT: Sir, is that the agreement?

THE [PETITIONER]: Yes, sir.

The district court then engaged the petitioner in a plea colloquy, *see Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969); *State v. Lopez*, 156 N.H. 193, 200 (2007), accepted the plea, and imposed the agreed-upon terms.

Shortly thereafter, the petitioner brought a habeas corpus petition in superior court, arguing that the district court violated his state and federal constitutional rights to equal protection when it "refused" his plea because he could not pay his entire fine at once. The superior court heard argument on May 5, 2009, and, on the same day, ordered the petitioner to be released from the house of corrections pending the issuance of its ruling.

On July 2, 2009, the superior court ruled that although the district court's action had violated the petitioner's equal protection rights, the petitioner waived his right to challenge the district court's rejection of his original plea by entering a new plea. As the superior court stated: "Because the petitioner pled *nolo contendere* despite the equal protection violation and does not argue that his plea was not knowing, intelligent, or voluntary, he has waived his right to challenge that violation now."

On appeal, the petitioner raises two questions: (1) whether the district court violated his constitutional rights "when it rejected a plea agreement on the grounds that [he] was unable to pay the fine immediately, without considering [his] financial inability to pay"; and (2) whether the petitioner "waive[d] his right to contest this constitutional violation when he entered into a renegotiated plea agreement." Because we conclude that the

petitioner's new plea constituted a waiver of his right to challenge the district court's rejection of his original plea, we need not decide whether, by rejecting his original plea, the district court violated the petitioner's constitutional rights.

■ A guilty plea, voluntarily, knowingly, and intelligently made, unconditionally waives all "independent claims relating to the deprivation of constitutional rights that occurred prior to [its] entry." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). "[B]oth the parties and the trial court have assumed that a plea of *nolo contendere* is functionally equivalent to a plea of guilty, with which [*Tollett*] was concerned. We will proceed on the same assumption, but without warranting its soundness." *Richard v. MacAskill*, 129 N.H. 405, 407 (1987).

■ The *Tollett* court "reasoned that a guilty plea represents a break in the chain of events which has preceded it in the criminal process, and reflects a defendant's decision to leave behind claims of constitutional error in an effort to expeditiously resolve the criminal proceedings against him." *United States v. Gaffney*, 469 F.3d 211, 215 (1st Cir. 2006) (quotation and citation omitted); *see Tollett*, 411 U.S. at 267. Having entered a plea, a defendant may only "attack [its] voluntary and intelligent character." *Tollett*, 411 U.S. at 267.

■ New Hampshire follows this general rule. *See State v. Parkhurst*, 121 N.H. 821, 822 (1981). We have held, for instance, that, by entering a guilty plea, a defendant waives the right to appeal a trial court's ruling upon his motion to suppress. *Id.* The First Circuit Court of Appeals has ruled that a guilty plea waives an appeal based upon: (1) claims of insufficient evidence of an interstate commerce nexus; (2) a discovery violation claim; (3) a claim based upon a so-called "jurisdictional" element of a criminal statute; (4) a Speedy Trial Act claim; (5) a constitutional challenge to a criminal statute; (6) suppression claims based upon the Fourth Amendment to the Federal Constitution; (7) a statute of limitations claim; and (8) a challenge to the voluntariness of a confession. *Gaffney*, 469 F.3d at 215 n.2 (citing cases).

■ However, "[a] guilty plea does not foreclose a petitioner from challenging any constitutional defect in the sentence that arises *subsequent* to the plea." *Molinas v. Commissioner of Correction*, 652 A.2d 481, 487 (Conn. 1994). For example, in *State v. Moran*, 158 N.H. 318, 320-21 (2009), we rejected the State's assertion that the defendant had waived his ability to challenge his suspended sentence by previously negotiating a plea. We explained: "In New Hampshire, consent of the defendant cannot make an otherwise illegal sentence legal, regardless of whether that consent was given knowingly, intelligently, and voluntarily." *Moran*, 158 N.H. at 320

(quotation and brackets omitted); *see State v. Burgess*, 141 N.H. 51, 54 (1996). *But cf. State v. Dansereau*, 157 N.H. 596, 603 (2008) (declining to adopt general rule "that, when a sentence is illegal, a guilty plea is involuntary because the defendant has not been informed of the direct consequences of his plea, and, thus, the plea must be vacated").

In this case, the petitioner is not challenging the legality of his sentence, but instead claims that, before the district court accepted his new plea, it acted unconstitutionally by rejecting his original plea. Consistent with our general rule that a plea waives all claims relating to the deprivation of constitutional rights occurring before its entry, we hold that by entering a new plea, the petitioner waived any claim that the district court violated his constitutional rights by rejecting his original plea.

In his brief, the petitioner urges that we expand our existing case law regarding illegal sentences and hold that "a defendant who enters [into] a plea agreement does not waive his right to challenge unconstitutional *actions of the judge* in sentencing." (Emphasis added.) He cites no authority for this proposition and does not develop an argument as to why our case law should be so expanded. We, therefore, decline his invitation. To the extent that the petitioner intimated at oral argument that he was, in fact, challenging the legality of his sentence, he did not brief this argument, and, therefore, it is deemed waived. *See State v. Kelly*, 159 N.H. 390, 394 (2009). This argument is also beyond the scope of the petitioner's questions in his notice of appeal. *See Guyotte v. O'Neill*, 157 N.H. 616, 623 (2008).

While *conceding* that his plea was voluntarily, knowingly and intelligently made, the petitioner argues that it cannot be a waiver because he did not expressly waive his right to challenge the district court's rejection of his original plea on equal protection grounds. For support, he relies upon *Molinas*, 652 A.2d at 486-87. *Molinas*, however, is factually distinguishable from this case.

In *Molinas*, the petitioner accepted a plea offer in 1989, pleading guilty to a narcotics charge in exchange for a promise of a "sentence recommendation by the state of twelve years imprisonment." *Molinas*, 652 A.2d at 483 n.4. He was then sentenced to a twelve-year term to be suspended after seven years, five years of probation, and a $20,000 fine. *Id.* at 483. In 1993, the petitioner was paroled, but was not released because he had not paid the fine. *Id.* He filed a petition for a writ of habeas corpus, which was granted and upheld on appeal. *Id.* at 483-84. The appellate court concluded that because the defendant was not informed when he entered into the plea agreement seven years earlier that his failure to pay the fine could result in continued incarceration, his plea was not knowing, voluntary or intelligent. *Id.* at 486-88. The appellate court acknowledged that while a plea

constitutes a waiver of constitutional claims occurring before its entry, it cannot constitute a waiver of subsequent constitutional defects. *Id.* at 487.

Here, by contrast, the petitioner *admits* that his plea was voluntarily, knowingly and intelligently made. In his brief, he concedes that he "knew what he was doing when he entered into the no contest plea" and that he "voluntarily ple[d] no contest knowing that he would satisfy the fine through time spent in jail rather than through time payments." Further, at oral argument, the petitioner conceded that he did not challenge the voluntary, knowing or intelligent character of his plea. Indeed, the record shows that the petitioner volunteered to be incarcerated to "serve the fine off." As his counsel informed the court, "[W]hile we maintain that he's entitled to time to pay, he's *opting* to serve the fine off to permit the Court — at its discretion — to go forward with the plea today." (Emphasis added.)

To the extent that the petitioner seeks now to argue that his plea was not voluntarily, knowingly or intelligently made, he has not demonstrated that he made this claim to the superior court, and it is not preserved for our review. The trial court specifically observed that the petitioner "does not argue that his plea was not knowing, intelligent, or voluntary."

Moreover, whereas in *Molinas*, the petitioner's constitutional claim did not arise until after he entered his plea, in this case, the petitioner's claim arose before he entered his new plea. The *Molinas* plea agreement "itself did not alert the petitioner to the right at issue because its alleged impact on his continued incarceration did not become apparent until several years later, when his parole became effective." *Id.* Here, any constitutional claim arising from the district court's rejection of the petitioner's original plea occurred before he entered his new plea.

 While we do not need to reach the issue in this case, we are troubled by the petitioner's assertions that district courts commonly reject plea agreements requiring payment of a fine when a defendant is financially unable to do so. In the exercise of our supervisory authority, we strongly urge the district courts to follow District Court Rule 2.7 when faced with a defendant who "indicates an inability to pay" a court-ordered fine "forthwith." Pursuant to that rule, the defendant "shall be required to complete an affidavit of resources, under oath," before leaving the courthouse and, if the court finds that he is indigent, the court has the discretion to defer payment, order periodic payments thereof, or allow the defendant to perform community service in lieu of payment. *See* DIST. CT. R. 2.7. Additionally, it is well within the district court's discretion to accept the

plea, but defer imposition of sentence for a brief period of time to provide the defendant a reasonable opportunity to raise funds sufficient to pay the fine.

*Affirmed.*

BRODERICK, C.J., and DUGGAN, HICKS and CONBOY, JJ., concurred.