# United States Court of Appeals
## For the First Circuit

No. 13-1508

UNITED STATES,

Appellee,

v.

ADEMIR CASTRO-VAZQUEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José A. Fusté, U.S. District Judge]

Before

Barron, Selya, and Dyk,[*]
Circuit Judges.

Susan Z. Jorgensen, Assistant United States Attorney, with whom Rosa Emilia Rodriguez-Velez, United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, and Carmen M. Márquez-Marín, Assistant United States Attorney, were on brief, for appellee.
Sharon L. Beckman, with whom Larissa Warren and Graham D. Welch were on brief, for defendant-appellant.

September 4, 2015

---

[*]Of the Federal Circuit, sitting by designation.

**DYK, Circuit Judge**.  Ademir Castro-Vasquez pled guilty to being a prohibited person in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  On appeal he challenges his conviction and the 78-month sentence imposed by the United States District Court for the District of Puerto Rico.  We affirm Castro-Vazquez's conviction, but we vacate and remand for reconsideration of the sentence because the district court erred in its approach to applying a ten-level sentencing enhancement under the United States Sentencing Guidelines ("guidelines") § 2K2.1(a)(2).

**I.**

On September 26, 2012, acting on an anonymous tip, Puerto Rico Police Department officers were investigating the presence of suspicious persons at a gas station in Trujillo Alto, Puerto Rico. They observed Castro-Vazquez, allegedly pacing nervously, accompanied by another man, Allen Miranda-Melendez, filling a container with gas for a car parked nearby at the side of a rural road.  One officer observed a bulge on Castro-Vazquez's waist. After stopping the two men at the parked car, Castro-Vazquez was asked to lift up his shirt, which he refused to do.  One of the officers then lifted up Castro-Vazquez's shirt, and saw a firearm on his waist, at which point both men were arrested.

Castro-Vazquez was charged with being a convicted felon in possession of a firearm under 18 U.S.C. § 922(g)(1).  Miranda-Melendez was charged with conspiring with Castro-Vazquez to commit

-2-

robbery under 18 U.S.C. § 1951(b)(1), though Castro-Vazquez was not himself charged with such a conspiracy.

At his arraignment on October 17, 2012, Castro-Vazquez pled not guilty. The magistrate judge ordered that the parties would have "7 days for discovery and 14 days thereafter to file any motions." At a status conference held November 7, 2012, the district court set trial for December 3, 2012, and refused the defense counsel's request for additional time. On November 30, 2012, the defense counsel filed a motion to continue the trial for one week. The court instead granted a one-day continuance to December 4.

Two days before trial was scheduled, Miranda-Melendez's attorney filed a motion to suppress certain incriminating statements that Miranda-Melendez had allegedly made. One day before trial was scheduled, Castro-Vazquez's attorney also filed a motion to suppress evidence, including the firearm and a mobile phone with pictures of the defendant carrying the firearm, seized at the time of Castro-Vazquez's arrest. Castro-Vazquez alleged that this evidence should be suppressed because it was the result of an unlawful warrantless search, seizure, and arrest in violation of the Fourth Amendment. In opposing the motion to suppress, the government raised no timeliness objection to the motion. Instead, the government argued that the officers had reasonable suspicion to stop and frisk Castro-Vazquez, and probable cause to arrest him.

The district court denied both defendants' motions, stating that, with respect to Castro-Vazquez's motion, the court "will not entertain a motion to suppress filed on the eve of trial." The court also stated that Miranda-Melendez and Castro-Vazquez should make their suppression arguments "at trial and as part of the Rule 29 motion." Id.

Miranda-Melendez chose to take the district court's recommended course. He went to trial and requested suppression of the incriminating statements. The district court suppressed the statements and dismissed his case apparently because, in the absence of the statements, there was insufficient evidence. Castro-Vazquez, however, took a different tack. On the morning trial was to begin and before the jury was empaneled, at about 10:30 A.M., Castro-Vazquez's counsel asked for ten minutes for a bench conference, during which she renewed the motion to suppress. The court again refused to hear the motion, noting that counsel "filed it hours before trial would start" and that the court "will not consider a late motion" because "[m]otions to suppress have to be timely filed." The court also stated that it would allow the suppression issue to be raised at trial, expressly stating that the point was "preserv[ed]." The bench conference for both defendants lasted until about 11:00 A.M. About a half hour later, Castro-Vazquez requested a change-of-plea hearing. At the colloquy, the district court asked Castro-Vazquez a number of questions to ensure

-4-

that he understood the charges and was pleading voluntarily.  When asked whether he was satisfied with his attorney's work, Castro-Vazquez apparently responded in the affirmative but with what the district court characterized as a "grimace."  The district court repeated the question and told Castro-Vazquez he did not have to plead guilty, but Castro-Vazquez noted he was not being forced to plead guilty, and the court accepted the plea.

Castro-Vazquez was sentenced on March 22, 2013.  At his sentencing hearing, the district court sentenced him to 78 months, using as a guideline range 63 to 78 months, based on a total offense level of 22 and a criminal history category of IV.  The total offense level of 22 was calculated by relying on Section 2K2.1 of the Sentencing Guidelines, which provides a prior felony enhancement for unlawful possession of a firearm.  The base offense level is increased from 14 to 24 "if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense."  U.S.S.G. § 2K2.1(a)(2).  The total offense level was 22 because Castro-Vazquez was also given a two-level reduction for his acceptance of responsibility.  The district court did not state which of Castro-Vazquez's prior convictions were relied on to arrive at the guideline range, relying instead on the presentence report.  The report stated that the base offense level was calculated pursuant to Section 2K2.1(a)(2), and listed seven

prior convictions (with three separate concurrent sentences) for burglary, robbery, and certain drug-related crimes, but the report also did not state which of those prior convictions were relied on for the prior felony enhancement. Castro-Vazquez entered no objections to the contents of the report (though as discussed below there is a question whether there was verification that Castro-Vazquez "read and discussed" the report with counsel, see Fed. R. Crim. P. 32(i)(1)(A)). During sentencing, the district court recited some facts concerning Castro-Vazquez's prior criminal activity alleged in the report, and noted that the sentences for his prior convictions had been concurrent and too lenient.

## II.

Castro-Vazquez challenges the voluntariness of his unconditional guilty plea. Although both Castro-Vazquez and the government suggest the standard of review is de novo, in fact we have yet to decide whether, when a defendant challenges the voluntariness of a plea on grounds other than a Rule 11 error, review is de novo even if defendant did not object below. See United States v. Rodríguez-Morales, 647 F.3d 395, 398 (1st Cir. 2011); Sotirion v. United States, 617 F.3d 27, 34 n.6 (1st Cir. 2010). We need not decide the issue now since we conclude that, even under a de novo standard of review, Castro-Vazquez's guilty plea has not been shown on this record to have been involuntary,

reserving for a Section 2255 proceeding the question of ineffective assistance of counsel.

We first address Castro-Vazquez's complaint that the district court erred in refusing to decide the motion to suppress before trial. Federal Rules of Criminal Procedure Rule 12(b)(3) requires that a motion to suppress "must be raised by pretrial motion," Fed. R. Crim. P. R. 12(b)(3) (2007), "[b]efore [t]rial," id. However, the court "may, at the arraignment or as soon afterward as practicable, set a deadline for the parties to make pretrial motions." Id. R. 12(c)(1). Either way, the court "must decide every pretrial motion before trial unless it finds good cause to defer a ruling." Id. R. 12(d).

Here, the magistrate judge at arraignment had set a deadline of "7 days for discovery and 14 days thereafter to file any motions." Relying on his assertion that discovery in fact was not completed within the seven-day period and was not completed until December 3, 2012, Castro-Vazquez avers that his December 3, 2012, motion to suppress was well within the fourteen-day post-discovery deadline. The only effective deadline, he says, was thus the default deadline in Rule 12(b)(3): that pretrial motions to suppress must be filed "[b]efore [t]rial."

"Before trial" in Rule 12(b)(3) means before the jury is empaneled. The main purpose of Rule 12(d)'s requirement that the district court hear pretrial motions before trial is that "[w]ere

-7-

a defendant able to delay such a motion until trial, he could prevent the government from appealing" because jeopardy would have attached at trial. United States v. Barletta, 644 F.2d 50, 54-55 (1st Cir. 1981). And it is "[o]nce a jury has been sworn [in that] jeopardy attaches, [and] the government loses its right to appeal an adverse ruling on suppression." United States v. Nuñez, 19 F.3d 719, 723 (1st Cir. 1994) (quoting United States v. Taylor, 792 F.2d 1019, 1025 (11th Cir. 1986)); see also United States v. Dittus, 453 F.2d 1335, 1336 (3d Cir. 1972) (holding that a renewed motion for suppression at the time of jury selection was untimely); United States v. Allied Stevedoring Corp., 241 F.2d 925, 931 (2d Cir. 1957) (holding that motion to suppress delayed until "40 jurors had been assembled, and the prosecution was about to open" was untimely). Here Castro-Vazquez filed a motion to suppress the day before trial began. He argues that because the district court did not set a deadline requiring the suppression motion to be filed at an earlier time, the motion was timely, and the district court erred in finding it to have been untimely. Whether the district court erred in not deciding the motion before trial and whether Castro-Vazquez had standing to complain of that error are questions that we need not address. That is so because, even if not deciding the motion before trial was error, Castro-Vazquez waived this argument by pleading guilty unconditionally.

It is well-established that an unconditional guilty plea results in the waiver of errors preceding the plea.  As the Supreme Court held in <u>Tollett</u> v. <u>Henderson</u>, 411 U.S. 258 (1973), "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."  <u>Id.</u> at 267.  This court has "assiduously followed the letter and spirit of <u>Tollett</u>, holding with monotonous regularity that an unconditional guilty plea effectuates a waiver of any and all independent non-jurisdictional lapses that may have marred the case's progress up to that point."  <u>United States</u> v. <u>Cordero</u>, 42 F.3d 697, 699 (1st Cir. 1994).  So long as the unconditional guilty plea is knowing and voluntary, the <u>Tollett</u> rule applies.  <u>See</u> <u>Tollett</u>, 411 U.S. at 267 (the defendant "may only attack the voluntary and intelligent character of the guilty plea").[1]

---

[1]    Castro-Vazquez cites dicta in <u>United States</u> v. <u>Gaffney</u>, 469 F.3d 211, 215 (1st Cir. 2006), stating that constitutional violations that are not "independent" of a plea but rather "intertwined with the plea itself" might "evade[] <u>Tollett</u>'s strictures."  <u>Id.</u> at 215.  But independent of counsel's potential ineffective assistance, the district court's possible violation of Rule 12 would not rise to the level of a constitutional violation. In addition, the mere "fact of a pending trial does not serve to make an eve-of-trial plea involuntary."  <u>United States</u> v. <u>White</u>, 734 F.3d 843, 849 (8th Cir. 2013); <u>see also</u> <u>Doe</u> v. <u>Woodford</u>, 508 F.3d 563, 569-72 (9th Cir. 2007) (two hours to consider a plea bargain did not render plea involuntary).

There is no basis to conclude on this record that the plea was unknowing or involuntary.  Castro-Vazquez does not allege the district court coerced or misinformed him in his change of plea hearing.  See, e.g., Mack v. United States, 635 F.2d 20, 25 (1st Cir. 1980).  Instead, he argues that the guilty plea was involuntary because of his counsel's ineffectiveness.  His theory appears to be that the suppression motion was a strong one (as allegedly evidenced by the success of his co-defendant's motion) and that Castro-Vazquez's counsel was ineffective because she failed to counsel Castro-Vazquez to go to trial and pursue the suppression motion.

In such circumstances, this court will not review a claim of ineffective assistance of counsel on direct appeal.  See United States v. Vázquez-Larrauri, 778 F.3d 276, 293–94 (1st Cir. 2015) ("As a general rule, this court does not review ineffective assistance of counsel claims on direct appeal . . . except[] where the critical facts are not genuinely in dispute and the record is sufficiently developed . . . ." (internal quotation marks, citations omitted)); United States v. Torres-Rosario, 447 F.3d 61, 64 (1st Cir. 2006) ("Sixth Amendment attacks on counsel are rarely allowed on direct appeal because they require findings as to what happened and, as important, *why* counsel acted as he did — information rarely developed in the existing record."); United States v. Mala, 7 F.3d 1058, 1063 (1st Cir. 1993) (same).

-10-

Castro-Vazquez relies on United States v. Mercedes-De La Cruz, 787 F.3d 61 (1st Cir. 2015), as permitting a direct appeal challenge to counsel's effectiveness, but that case is distinguishable. There, in a "rare case," id. at 63, this court reviewed an ineffective assistance of counsel claim on direct appeal because it was clear that the defense attorney simply "never filed a motion to suppress on behalf of [the defendant], much less a timely one," id. at 67, even though the motion would "quite likely" have been meritorious, id. at 68, and his co-defendants, who had less plausible grounds for doing so, did file timely motions, id. at 67. But here, there is a question whether the suppression motion Castro-Vazquez did file was in fact timely. And further, Castro-Vazquez's claim involves highly fact-dependent questions as to whether Castro-Vazquez was adequately counseled to plea when his suppression motion could be considered at trial.

"An ineffective assistance of counsel claim that requires further factual determinations should be brought through a collateral proceeding in district court under 28 U.S.C. § 2255." United States v. Reyes, 352 F.3d 511, 517 (1st Cir. 2003); see also Mala, 7 F.3d at 1063 ("When faced with similar situations in comparable cases, we have routinely dismissed the relevant portion of the appeal without prejudice to the defendant's right to litigate his ineffective assistance claim through the medium of an application for post-conviction relief."). In this case, the

-11-

ineffective assistance of counsel claim is sufficiently complex that the district court may find it desirable to appoint counsel if Castro-Vazquez petitions for Section 2255 relief. See Mala, 7 F.3d at 1063-64 (directing district court to appoint counsel for Section 2255 proceeding because constitutional claim was colorable, factually and legally complex, and incarcerated appellant was hampered in his ability to investigate undeveloped facts).

## III.

We now turn to issues concerning Castro-Vazquez's sentencing. Castro-Vazquez objects to the prior felony enhancement pursuant to Section 2K2.1 of the guidelines, which resulted in a total offense level of 22. As explained above, the district court apparently derived the prior felony enhancement from the presentence report's description of Castro-Vazquez's prior convictions. Section 2K2.1 provides for a prior felony enhancement "if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G § 2K2.1(a)(2). Castro-Vazquez contends that his prior convictions did not satisfy the requirement of at least two crime-of-violence or controlled-substance offenses.

Below, Castro-Vazquez failed to object to the sentence imposed, so our review is for plain error. See United States v. Serrano-Mercado, 784 F.3d 838, 844-45 (1st Cir. 2015). Castro-

-12-

Vazquez must thus demonstrate "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected [his] substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).

Before the district court, the government relied on several prior convictions listed in the presentence report, including robbery, burglary, and drug convictions.[2] On appeal, however, the government does not argue that Castro-Vazquez's drug convictions qualify as predicate offenses and relies only on the robbery and burglary convictions. Under this approach, if either the burglary or robbery conviction failed to qualify as a "crime of violence," there would have been no basis for an enhancement.

The guidelines define the term "crime of violence" in Section 2K2.1(a)(2) as:

> [A]ny offense under federal or state law, punishable by
> imprisonment for a term exceeding one year, that —
> (1) has as an element the use, attempted use, or
> threatened use of physical force against the person of
> another, or
> (2) is burglary of a dwelling, arson, or extortion,
> involves use of explosives or otherwise involves
> conduct that presents a serious potential risk of
> physical injury to another.

---

[2] Also listed in the report were illegal appropriation and aggravated damages convictions with sentences served concurrently with the burglary conviction. The parties apparently agree that those are not relevant to this appeal.

U.S.S.G. § 4B1.2(a).[3]  Thus, to qualify as a crime of violence, a prior conviction must contain an element of the threat, use, or attempted use of force, be one of the "enumerated offenses," such as burglary of a dwelling, or fall within what is known as the "residual clause" because it involves conduct that "presents a serious potential risk of physical injury."  See United States v. Ramirez, 708 F.3d 295, 300 (1st Cir. 2013).  In order to determine whether a prior conviction counts as a crime of violence, we apply the framework outlined by the Supreme Court in Descamps v. United States, 133 S. Ct. 2276 (2013).  See United States v. Ramos-González, 775 F.3d 483, 504–05 (1st Cir. 2015).[4]  We look to the elements of the prior convictions as defined by the relevant statute — not to the particular facts underlying the convictions, see Descamps, 133 S. Ct. at 2283 — and we compare those to the elements of the crimes described in the guideline's definition.

If the statute is indivisible, we apply a "categorical approach."  Id. (citing Taylor v. United States, 495 U.S. 575 (1990)).  Under that approach, if the statute has the same elements

_____

[3]      The term is defined in Section 2K2.1 by cross-reference to the term as it is used in Section 4B1.1, part of the career offender guidelines.

[4]      The definition of "crime of violence" is "nearly identical" to the definition of "violent felony" in the Armed Career Criminal Act, so courts "consistently have held that decisions construing one of these phrases generally inform the construction of the other."  Serrano-Mercado, 784 F.3d at 843 n.4 (internal quotation marks, citation omitted).

as the "generic" crime as defined in the guidelines, then the prior conviction serves as a predicate offense under the guidelines. Id. If the elements of the indivisible statute sweep more broadly than the generic crime, then the conviction cannot count as a predicate offense, "*even if* the defendant actually committed the offense in its generic form." Id. (emphasis added).

If, but only if, the statute is "divisible" — that is, it comprises multiple, alternative versions of a crime not all of which qualify as a predicate offense — then we apply a "modified" categorical approach, whereby a limited set of "Shepard" documents, such as the charging documents, plea agreements, plea colloquies, jury instructions, and verdict forms, may be consulted to determine which of a statute's alternative elements formed the basis of the prior conviction. Id. at 2283–84 (citing Shepard v. United States, 544 U.S. 13, 17, 25–26 (2005)). However, the modified approach "retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime." Id. at 2285.

The district court did not at the time of sentencing have the benefit of the Supreme Court's Descamps decision. Nonetheless, we conclude that the district court's approach may have been inconsistent with the Descamps framework.

With respect to Castro-Vazquez's burglary conviction, Castro-Vazquez argues that it cannot be a "crime of violence" because burglary under Puerto Rico law does not have an "unlawful

-15-

entry" requirement as does generic burglary under Section 4B1.2.
See Taylor, 495 U.S. at 598. In that respect, Castro-Vazquez
suggests, the Puerto Rico burglary statute is much like the
California one that the Supreme Court considered in Descamps, in
which the Court held that the lack of an unlawful entry element
made the California statute overbroad under the categorical
approach. See 133 S. Ct. at 2285-86 (noting the "simple
discrepancy between generic burglary and the [state] crime" is that
the "former requires an unlawful entry along the lines of breaking
and entering").

The Puerto Rico burglary statute states that it is
unlawful for "[a]ny person who enters a dwelling . . . with the
purpose of committing any crime involving an unlawful taking or a
felony." P.R. Laws Ann. Tit. 33, § 4831. The statute is thus
indivisible with respect to entry — it clearly does not contain
multiple, alternative elements of separate crimes with respect to
the type of entry required.[5] See Descamps, 133 S. Ct. at 2285 &

---

[5] This is not to say the statute is indivisible in all respects. The "place" element of the statute, for instance, recites alternative places where burglary can occur. See P.R. Laws Ann. Tit. 33, § 4831. Similarly, in Descamps, the California burglary statute at stake was indivisible with respect to entry, 133 S. Ct. at 2282, 2285, but also listed in the alternative many different places burglary could occur. See Cal. Penal Code Ann. § 459 (West 2010) (providing that a "person who enters" a list of alternative locations with intent to commit certain crimes is guilty of burglary).

n.2.  Descamps made it clear that the "focus [is] on the elements, rather than the facts, of a crime."  133 S. Ct. at 2285.

Here, we are concerned that the district court's approach was inconsistent with Descamps' stricture because the district court relied on the factual allegations of the presentence report rather than addressing whether the Puerto Rico burglary statute requires unlawful entry as an element of the offense.  The government in its briefs on appeal makes no effort to square the approach below with Descamps' approach, which requires determining whether the Puerto Rico burglary statute requires unlawful entry as an element.

It is true, of course, that plain error review presents a high bar, and the failure to follow the Descamps framework would not necessarily constitute plain error.  See Serrano-Mercado, 784 F.3d at 845-46.  However, as we also explained in Serrano-Mercado, the plain error standard can be overcome where there has been intervening legal authority that makes clear that the district court's approach was inconsistent with the intervening legal authority.  See Serrano-Mercado, 784 F.3d at 849; United States v. Torres-Rosario, 658 F.3d 110, 116 (1st Cir. 2011) (holding that district court commits prejudicial plain error in characterizing a conviction as a crime of violence if, at the time of appeal, intervening law makes clear that a conviction does not necessarily qualify categorically as a crime of violence); Henderson v. United

-17-

States, 133 S. Ct. 1121, 1127–28 (2013) (plain error assessed according to law at time of appeal, even if prior law was merely unsettled).

At the time of Castro-Vazquez's sentencing on March 22, 2013, the Supreme Court had not yet decided Descamps (decided June 20, 2013). After sentencing, Descamps established that in the case of an indivisible statute, such as the burglary statute here, the facts surrounding a particular prior conviction cannot qualify it as a predicate offense if the statute itself sweeps too broadly. See United States v. Fish, 758 F.3d 1, 14 (1st Cir. 2014) (noting that Descamps "clarified the ornate rules" of this approach, in particular clarifying that "the only way a facially overbroad statute can qualify as a[] . . . predicate" is via the modified categorical approach in the case of divisible statutes). The law in this circuit before Descamps was not entirely settled as to whether facts alleged in a presentence report could be used to show a prior conviction is a predicate offense. See United States v. McVicar, 907 F.2d 1, 2 (1st Cir. 1990) (relying on conduct alleged in a presentence report and what robbery "typically involves," concluding that robbery was a crime of violence); see also United States v. Martinez, 762 F.3d at 135–36 (noting that the statement in United States v. Davis, 676 F.3d 3, 9 & n.5 (1st Cir. 2012), that the facts recited in a presentence report, if relied on, would "almost certainly be sufficient to show" harmful battery was

"likely no longer the correct standard" after Descamps). Here, the record does not show the district court made any inquiry at all into the elements of the Puerto Rico burglary statute, which is enough in these circumstances to overcome the limitations otherwise imposed by plain error review. See Torres-Rosario, 658 F.3d at 116-17.

We address one other argument concerning Castro-Vazquez's burglary conviction.[6] Castro-Vazquez contends that his burglary conviction was a misdemeanor rather than a felony punishable by imprisonment for over one year, thus preventing the conviction from being a predicate offense. See U.S.S.G. § 2K2.1, Application Note 1 (defining "felony conviction" for purposes of Section 2K2.1 as "an offense punishable by death or imprisonment for a term exceeding one year"). His argument seems to be that he was convicted for attempted burglary rather than attempted aggravated burglary. He argues that, because the former is not an offense punishable under Puerto Rico law with imprisonment for over one year, it is a misdemeanor, while the latter, which is punishable by

---

[6] Castro-Vazquez argues in a footnote that the location elements of the Puerto Rico burglary and aggravated burglary statutes (requiring a person to enter "a dwelling, building or other construction or structure or its dependencies or annexes," P.R. Laws Ann. Tit. 33, § 4831, and, in the case of aggravated burglary, that such entry be while the building is "inhabited," id. § 4832) are also overbroad. We deem these cursory arguments waived. See Nat'l Foreign Trade Council v. Natsios, 181 F.3d 38, 60 n.1 (1st Cir. 1999) ("We have repeatedly held that arguments raised only in a footnote or in a perfunctory manner are waived.").

a term exceeding a year, would be a felony.  See P.R. Laws Ann. Tit. 33, § 4831 (burglary "shall incur a misdemeanor"); id. § 4832 (aggravated burglary "shall incur a third degree felony"); id. § 4644 (misdemeanors punishable by imprisonment for up to ninety days; third-degree felonies punishable by imprisonment between three and eight years).  Even if we were to conclude that any error in characterizing the burglary conviction as a felony were not plain error, we think the district court should consider this issue on remand.  Here, "we have already concluded that the judgment should be remanded to correct [another error], and we have broad authority to shape a remand in the interests of justice."  United States v. Merric, 166 F.3d 406, 412 (1st Cir. 1999) (citing 28 U.S.C. § 2106).

As for Castro-Vazquez's arguments with respect to the robbery convictions, we conclude again that a remand is required in the light of Descamps.  Puerto Rico's robbery statute criminalizes a person's "unlawfully tak[ing] personal property belonging to another in the immediate presence of said person and against his/her will by means of violence or intimidation."  P.R. Laws Ann. Tit. 33, § 4826.  Castro-Vazquez contends that neither of the alternative crimes established by this apparently divisible robbery statute — criminalizing robbery either by "violence" or by "intimidation" — qualifies as a crime of violence.  According to Castro-Vazquez, intimidation is defined under Puerto Rico law to

-20-

include mere moral or psychological pressure, and violence is defined under Puerto Rico law to include the slightest use of force. Either way, the prior offense would fall short of the guidelines requirement that the offense include an element of "physical force," which is defined as "*violent* force — that is, force capable of causing physical pain or injury to another person," Martinez, 762 F.3d at 133 (quoting Johnson v. United States, 559 U.S. 133, 140 (2010)); see also Johnson, 559 U.S. at 140 ("violent" in ACCA connotes a "substantial degree of force").[7] Here, just as with the burglary conviction, the district court made no inquiry at all into the elements of either type of robbery under Puerto Rico law. Thus, given that Descamps clarified that even the "modified" categorical approach "retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime," Descamps, 133 S. Ct. at 2285, we follow Torres-Rosario in holding that a remand is required to consider these issues in the light of Descamps. If the district court concludes that only one of the divisible crimes of the robbery statute constitutes a crime of violence, it will be required to determine whether proper

---

[7] "Robbery" is also listed as an example of a "crime of violence" in the guidelines. See U.S.S.G. § 4B1.2, Application Note 1. That does not change our conclusion. See United States v. Ramirez, 708 F.3d 295, 302 n.8 (1st Cir. 2013) (noting that we apply the categorical approach to determining whether a prior conviction falls within a generic definition of an enumerated offense, including those listed in application notes (citing United States v. Walker, 595 F.3d 441, 445–46 (2d Cir. 2010) ("robbery" in Section 4B1.2, Application Note 1))).

-21-

<u>Shepard</u> materials establish that Castro-Vazquez was convicted of that offense. See <u>Torres-Rosario</u>, 658 F.3d at 117.

We decline on appeal to accept the government's invitation, presented for the first time in its Rule 28(j) letter, to decide whether unlawful entry was an element of the Puerto Rico burglary statute, whether the burglary offense was a felony or misdemeanor, and whether and to what extent violent physical force is an element of both divisible parts of the Puerto Rico robbery statute. See <u>Ruskai</u> v. <u>Pistole</u>, 775 F.3d 61, 66-67 (1st Cir. 2014) (Rule 28(j) "should not be used to introduce new arguments"). Upon remand, the district court should address in the first instance such questions. If on remand, the district court concludes that the guidelines calculation was erroneous and that an enhancement was not warranted, resentencing will be required. See <u>United States</u> v. <u>Tavares</u>, 705 F.3d 4, 25 (1st Cir. 2013). Here, there is a "reasonable likelihood 'that, but for the error, the district court would have imposed a different, more favorable sentence.'" <u>United States</u> v. <u>Ortiz</u>, 741 F.3d 288, 293-94 (1st Cir. 2014) (quoting <u>United States</u> v. <u>Turbides-Leonardo</u>, 468 F.3d 34, 39 (1st Cir. 2006)).

It remains to consider the residual clause in the guidelines' definition of "crime of violence," allowing a prior conviction to be a predicate offense where it "otherwise involves conduct that presents a serious potential risk of physical injury

to another."  U.S.S.G. § 4B1.2(a).  Intervening authority has called the residual clause into question.  In <u>Johnson</u> v. <u>United States</u>, 135 S. Ct. 2551 (2015), the Supreme Court struck down a residual clause with identical language in the Armed Career Criminal Act ("ACCA") as unconstitutionally vague.  <u>See</u> 135 S. Ct. at 2555-56, 2560 (holding that the residual clause in the ACCA's definition of "violent felony" is unconstitutional).  The structure and the language of the two residual clauses are substantially the same.  <u>See</u> <u>United States</u> v. <u>Fish</u>, 758 F.3d 1, 5 (1st Cir. 2014).  We do not decide whether the residual clause of the guidelines fails under <u>Johnson</u>.  <u>See</u> <u>United States</u> v. <u>Tichenor</u>, 683 F.3d 358, 363-65 (7th Cir. 2012)(rejecting vagueness challenge to the "crime of violence" definition because the guidelines are merely advisory).  We hold only that if on remand the government relies on the residual clause (it has disclaimed such reliance on appeal), the constitutional issue must be addressed.

Moreover, although the government does not argue on appeal that Castro-Vazquez's prior drug convictions count as "controlled substance offenses" under Section 4B1.2(b) of the guidelines, this should not be treated as a waiver, and the government, if it so chooses, should be permitted to attempt to establish on remand that those offenses qualify under the guidelines as predicate offenses.  <u>See</u> <u>Torres-Rosario</u>, 658 F.3d at

117 ("On remand, the government remains entitled to establish the ACCA designation . . . .").

Finally, while Castro-Vazquez also argues on appeal that the district court did not abide by Rule 32's requirement that the court "verify" the defendant "read and discussed" the presentence report with his counsel, see Fed. R. Crim. P. 32(i)(1)(A), we do not address this issue here, since we assume any such potential error will be corrected on remand. In addition, Castro-Vazquez's argument that the district court erred in sentencing him at the top of the guidelines range may become moot in light of the remand. See Ramos-González, 775 F.3d at 509. We do not now address the issue.

CONCLUSION

We affirm Castro-Vazquez's conviction, but we remand for further proceedings as to his sentence consistent with this opinion.

**AFFIRMED-IN-PART, VACATED-IN-PART, AND REMANDED.**