# United States Court of Appeals
## For the First Circuit

No. 15-1894

UNITED STATES OF AMERICA,

Appellee,

v.

JOSE LUIS LOPEZ-PASTRANA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Torruella, Lipez, and Barron,
Circuit Judges.

Miriam Ramos-Grateroles for appellant.
Michael A. Rotker, Attorney, U.S. Department of Justice, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, John P. Cronan, Acting Assistant Attorney General, Criminal Division, and Normary Figueroa-Ruiz, Assistant United States Attorney, were on brief, for appellee.

May 4, 2018

**LIPEZ**, <u>**Circuit Judge**</u>.    Appellant Jose Luis Lopez-Pastrana, who was sentenced on drug and firearms charges pursuant to a plea agreement, claims that the district court erred by ordering a twelve-month term of home detention on the drug count to be served after his mandatory minimum five-year term of imprisonment on the firearms count.    We agree that the home-detention condition was imposed improperly and, accordingly, remand the case for resentencing.    We do not reach appellant's pro se appellate claims, as they are either waived or not properly before us.

## I.

Lopez-Pastrana was charged in a four-count indictment with two drug crimes and two weapons crimes.    He entered into a plea agreement in which he agreed to plead guilty to Count III, possession with intent to distribute marijuana, and Count IV, possession of a firearm in furtherance of a drug trafficking crime, in exchange for dismissal of the remaining two counts.    The plea agreement set forth the parties' non-binding recommendation that the court impose a sentence at the lower end of the Guidelines range of zero to six months' imprisonment for Count III, and a sixty-month sentence (the mandatory minimum) for Count IV.    As part of the agreement, Lopez-Pastrana waived the right to appeal

- 2 -

the judgment and sentence if the sentence imposed was consistent with the parties' recommendation.[1]

At the outset of the sentencing hearing in July 2015, the district court commented on the portion of Lopez-Pastrana's sentencing memorandum stating that he has a severe pulmonary illness and a limited life expectancy. Defense counsel reaffirmed the memorandum's assertion that Lopez-Pastrana, who was fifty-nine at the time of sentencing, had a twenty percent chance of surviving the next four years. The government responded that Lopez-Pastrana's health had improved during the roughly four months that he had been incarcerated. The prosecutor reported that the medical director of the correctional facility where appellant was housed had concluded that "his medical condition is not an end-stage disease."

Noting the undisputed fact that Lopez-Pastrana faced a sixty-month mandatory sentence on the firearms count, defense counsel explained that he had brought up appellant's limited life span for two reasons. First, counsel asked the court to recommend that Lopez-Pastrana serve his time in a prison medical facility. Second, counsel urged the court to support any recommendation made

---

[1] The "Waiver of Appeal" provision states, in full: "The defendant knowingly and voluntarily waives the right to appeal the judgment and sentence in this case, provided that the defendant is sentenced in accordance with the terms and conditions set forth in the Sentence Recommendation provisions of this Plea Agreement."

by the Bureau of Prisons for compassionate release based on appellant's health.  See infra note 7 (discussing 18 U.S.C. § 3582(c)(1)(A)).  The court acknowledged the requests, assuring counsel he would order appellant's placement in a clinical facility, and continued with the sentencing process.

For Count III, the drug offense, the court calculated the Sentencing Guidelines punishment to be imprisonment from zero to six months, a fine of $250 to $5,000, and a two-year term of supervised release.[2]  For Count IV, the firearms offense, the court observed that the Guidelines sentence is the statutory minimum -- sixty months -- to be followed by a supervised release period of two to five years.  After noting that it had considered the sentencing factors prescribed by 18 U.S.C. § 3553 -- including, "above all," Lopez-Pastrana's medical condition -- the court announced, as to Count III, that it would "perform . . . a variance as to him and . . . sentence him for the drug at zero months."  On Count IV, the court explained that it was imposing the statutory minimum "due to his medical history."  The court specified that, as required by statute, "[b]oth sentences shall be served consecutively to each other for a total of 60 months of imprisonment."

---

[2] In fact, by statute, the term of supervised release for Count III was "at least 2 years," assuming the sentence also included a term of imprisonment.  See 21 U.S.C. § 841(b)(1)(D).

- 4 -

The court also imposed a two-year term of supervised release on Count III and a five-year term of supervised release on Count IV, to be served concurrently. It then announced the conditions of release, including a twelve-month period of home confinement that would be monitored with an electronic device. The court declined to impose fines, but ordered the mandatory monetary assessment of $100 on each count.

After pronouncing the sentence and terms of release, the court noted that Lopez-Pastrana's waiver of his right to appeal was triggered "because this Court has sentenced the defendant below what he agreed -- not what he agreed, but below what he agreed." The court concluded its pronouncements by directing that Lopez-Pastrana "be placed in a clinical medical facility, a hospital-type facility, due to his Chronic Obstructive Pulmonary Disease" and instructing the Bureau of Prisons to ensure a medical evaluation and "proper medication for the pulmonary obstructive emphysema disease."

The government then moved to dismiss the other two counts and -- "just to clarify the record" -- pointed out that the zero months' sentence was not a variance, but fell at the lower end of the applicable guidelines range. The court accepted the correction and invited defense counsel to raise any objections to the conditions of supervised release.

At that point, a colloquy ensued between the court and defense counsel concerning the twelve-month period of home detention. Counsel objected to the substantial restraint that the monitoring device would pose for his seriously ill client after his release from prison, pointing out that appellant's activities would in any event be limited for five years by the requirements of supervised release. For its part, the court observed that it had anticipated that Lopez-Pastrana might "applaud this condition" because he would be able to obtain medical treatment at the government's expense during the home detention.

The exchange between court and counsel included the following:

> COURT: [T]his is what I thought would be a negotiation to going to zero [months]. . . .
> So you are saying that most probably he will not live this sentence. Fine.
>
> . . . .
>
> [T]his is the reason why the Court gave him no sentence as to a drug conviction. Zero. But I thought that if he lived, that he should be in his house in home detention, as an alternate sentence to the zero. There are many defendants that would break my arm for that.
>
> DEFENSE COUNSEL: I understand, Your Honor.
>
> COURT: You know, it's easier to serve it in your house with all the monitoring medical equipment that is going to be placed in there. That's what I thought.
>
> . . . .

COURT: . . . I want to know your last position relating to this, to this 12 months home detention.

DEFENSE COUNSEL: Well, Your Honor, you're going to have a person that is going to be very ill. And --

COURT: This is a person that is very ill who is going to be subsidized by the federal government for one extra year. That's what it is. If he's really very ill, . . . this is [a] medical condition in your house paid by the U.S. Government.

DEFENSE COUNSEL: I'd take it then, Your Honor.

COURT: All right. That's what I'm giving him. Because that's what it is.

DEFENSE COUNSEL: We'll take it. We'll take it.

COURT: All right. Who knows? Somebody else picks this up and wants to challenge it.
     But anyway, I've expressed on the record what I have done. It is not [to] provide him something -- a punishment because he's ill. No. It is a quid pro quo, which the Court, instead of giv[ing] him six months, is giving him 12 months of home detention medical care.

DEFENSE COUNSEL: Fine.

COURT: So that the record is clear, somebody else picks up this record and says, he can't put him in jail because he's sick. No, I am not. This is the quid pro quo for six months. It's 12 months home detention to receive medical treatment. All right?

DEFENSE COUNSEL: Fine.

COURT: All right.

Lopez-Pastrana challenges the twelve-month term of home confinement as, in effect, an unjustified variance from the applicable guidelines range of zero-to-six months' imprisonment. As we explain in Section II.C, that condition of supervised release was indeed imposed improperly, albeit for a different reason than Lopez-Pastrana asserts. The government insists, however, that we should reject appellant's challenge without considering its merits because it was doubly waived before reaching this court: expressly when counsel said at the sentencing hearing that "[w]e'll take" the home confinement condition, and also by operation of the appellate waiver provision in the plea agreement. As to the latter, the government maintains that, because Lopez-Pastrana's zero-months term of imprisonment is consistent with the plea agreement's recommendation, the appellate waiver provision was triggered. We thus turn first to the question of waiver.

## A. Appellate Waiver

We begin with the plea agreement's appellate waiver provision because, if it governs, we would be obliged to dismiss Lopez-Pastrana's sentencing appeal. See, e.g., United States v. Morales-Arroyo, 854 F.3d 118, 120 (1st Cir. 2017). In arguing that the appeal may not proceed, the government relies on our precedent holding that an agreement to surrender appellate review of "the judgment and sentence" -- language included in Lopez-

- 8 -

Pastrana's agreement -- encompasses challenges to conditions of supervised release. See, e.g., United States v. Rojas, 780 F.3d 68, 69 (1st Cir. 2015); United States v. Santiago, 769 F.3d 1, 7 (1st Cir. 2014). In our cases, we repeatedly have held that such a waiver extends to the conditions of release even where, as here, the "plea agreement says nothing about them." Rojas, 780 F.3d at 69. Hence, because the conditions of supervised release ordinarily play no role in assessing whether a defendant has waived the right to appeal a sentence,[3] the government asserts that we should look only to the term of imprisonment to determine whether appellant's sentence is consistent with the plea agreement's recommendation. From that perspective, "the sentence" -- sixty months on the firearms charge and no additional time on the drug charge -- conformed to the parties' agreed-upon proposal.

The government's position, however, fails to acknowledge the material difference between home confinement and other types of supervised-release conditions. Home confinement is treated as a form of "custody" under federal law, see 18 U.S.C. § 3624(c)(2) (allowing placement in home confinement as "[p]rerelease

---

[3] Plea agreements commonly do not reference conditions of supervised release, and we have therefore treated the conditions as part of the "sentence" to which an appellate waiver applies to avoid a construction of the appellate waiver that would "render the entirety of the waiver ineffective upon the imposition of any condition of supervised release." Rojas, 780 F.3d at 69.

custody"), and, indeed, "absconding from home confinement" can itself be a crime, United States v. Ko, 739 F.3d 558, 561 (10th Cir. 2014) (construing provision governing escape from federal custody, 18 U.S.C. § 751).[4] Moreover, the Guidelines and federal statutes allow home confinement only as a substitute for incarceration. See 18 U.S.C. § 3583(e)(4) (stating that a court, when including a term of supervised release after imprisonment, may "order the defendant to remain at his place of residence during nonworking hours," but such an order "may be imposed only as an alternative to incarceration" (emphasis added)); id. § 3563(b)(19) (stating that home confinement during nonworking hours may be imposed as a condition of a sentence of probation "only as an alternative to incarceration" (emphasis added)); U.S.S.G. § 5C1.1(e)(3) (stating, under the heading "Schedule of Substitute Punishments": "[o]ne day of home detention for one day of imprisonment"); U.S.S.G. § 5F1.2 ("Home detention may be imposed as a condition of probation or supervised release, but only as a substitute for imprisonment." (emphasis added)). Put simply, home

---

[4] We note that Ko involved the defendant's transition from imprisonment to release pursuant to 18 U.S.C. § 3624(c)(1), which directs the Bureau of Prisons, "to the extent practicable, [to] ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." The statute authorizes home confinement as one placement option. See 18 U.S.C. § 3624(c)(2).

confinement is a "unique" condition of release, permissible only as a stand-in for imprisonment.  United States v. Ferguson, 369 F.3d 847, 851 (5th Cir. 2004) (per curiam).

"We interpret plea agreements under basic contract principles and construe ambiguities in favor of allowing the appeal to proceed."  Morales-Arroyo, 854 F.3d at 120.  In that light, we have no difficulty concluding that the waiver provision in Lopez-Pastrana's plea agreement may not be construed to bar his challenge to a term of home confinement that is twice as long as the high end of the applicable imprisonment range, where the parties had recommended a sentence at the low end of the range.  Particularly given the day-for-a-day relationship between imprisonment and home detention prescribed by the Guidelines, the two forms of custody are most fairly afforded the same significance in applying Lopez-Pastrana's appellate waiver.  Indeed, in its brief, the government effectively credits this approach by describing Lopez-Pastrana's sentence as "an overall term of 72 months," consisting of twelve months of home detention and sixty months' incarceration.

Two other factors also support our conclusion.  First, the sentencing colloquy reproduced above indicates that the district court imposed the twelve-month period of home confinement as a substitute for a six-month term of incarceration.  Describing the supervised-release condition as "a quid pro quo," the court stated that "instead of giv[ing] him six months, [the court] is

- 11 -

giving him 12 months of home detention medical care." The Sentence Recommendation for Count III in the plea agreement, however, was for "a sentence of imprisonment in the **lower range** of the applicable guideline (if [Criminal History Category] I, 0 months)."[5] (Emphasis in original.) Hence, the term for which the court substituted home confinement was itself not "in accordance with the terms and conditions set forth in the Sentence Recommendation provisions of th[e] Plea Agreement." Second, even discounting by fifty percent the impact of home confinement compared to incarceration -- in effect, what the district court said it was doing -- the result similarly exceeds the agreed-upon recommendation. See generally United States v. Tourloukis, 558 F. App'x 112, 114-15 & n.3 (2d Cir. 2014) (summary order) (declining to decide "whether each month of home confinement should be seen as equivalent to a month, or perhaps some lesser period, of incarceration").

We therefore hold that Lopez-Pastrana's sentencing appeal is not barred by the plea agreement's appellate waiver provision.

---

[5] Appellant's Criminal History Category ("CHC") turned out to be II, but the same guideline range applies to CHC I and II.

## B. Waiver at the Sentencing Hearing

The government argues that defense counsel's twice-stated comment that "[w]e'll take" the offered quid pro quo of home confinement for incarceration, and counsel's response of "Fine" when the court asked if "12 months home detention to receive medical treatment" was acceptable, amounted to clear waivers of objections to the sentence.  We disagree.

In a portion of the colloquy preceding the excerpt reproduced above, defense counsel attempted to persuade the sentencing judge that, given his client's medical condition, a term of home confinement to follow his sixty-month term of incarceration was both unnecessary and unduly restrictive.  That exchange included the following:

> DEFENSE COUNSEL: As the Court is aware, every defendant that is . . . in jail to do their sentence, prior to their exiting they are placed in halfway houses and then they're monitored to see whether they should continue under those conditions that makes it viable. In this particular case, Your Honor has ordered that once he even finishes that process that he continue with some type of monitoring device.  If --
>
> COURT: Well, the problem was that since the Court gave this defendant a zero sentence, and he is going to require medical aid, we thought that maybe he would applaud this condition.
>
> DEFENSE COUNSEL: Well, Your Honor, remember that he will continue under supervised release for five years.  So . . . what I am objecting [to] is that he be continued restrained by monitoring devices.

COURT: But this is restrained at his house.
Assume that the Court gave him zero, but at the same time the Court gave him home detention, would you object to that?

DEFENSE COUNSEL: If, Your Honor -- and please, I'm not trying to be funny, but is the Court considering . . . changing the five years for that?

COURT: Well, no.

DEFENSE COUNSEL: That's what I'm saying. That's what I'm saying, Your Honor, it's in addition to.

A short time later, after noting that "obviously [appellant is] going to do five years on the gun count," counsel explained that his "only concern" was that "if he's ill now, it's likely that he will be" upon his release. When the court insisted that home confinement would be advantageous "if he's really very ill" because he would receive government-paid medical care, counsel stated, "I'd take it then, Your Honor."

In context, we do not read counsel's ultimate acquiescence to home confinement as a willing relinquishment of objections to that condition. Rather, faced with the court's ultimatum that appellant's only other choice was an additional six months in prison, counsel accepted as "Fine" what he evidently viewed as the better of two undesirable options. Particularly given the improper choice offered by the court -- as we discuss below -- we decline to reject the home-confinement challenge as

- 14 -

waived by means of the colloquy at sentencing. We think it fairer to view the claim as imperfectly preserved and, hence, subject to plain error review. See, e.g., United States v. Garay-Sierra, 885 F.3d 7, 12 (1st Cir. 2018).

**C. The Propriety of the Home Confinement Condition**

Having reached the merits, we reiterate that Lopez-Pastrana received sixty months' imprisonment on Count IV and concurrent supervised release terms on Counts III (two years) and IV (five years). This sentence included a clear error. As the government acknowledges, the supervised release term for Count III is improper because the court imposed no incarceration on that count, and supervised release must follow a prior term of imprisonment. See 18 U.S.C. § 3583(a) (stating that the court, "in imposing a sentence to a term of imprisonment for a felony or a misdemeanor, may include as a part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment" (emphasis added)); see also United States v. Pugh, 515 F.3d 1179, 1201 (11th Cir. 2008) ("[B]ecause the district court did not impose any custodial sentence . . . by law it could not impose any term of supervised release."). Necessarily, then, the home-confinement condition is invalid if the court applied it to the erroneous term of supervised release on Count III.

At the sentencing hearing, after pronouncing the terms of imprisonment and supervised release, the district court recited

the conditions of release without differentiating between the two counts. The court's written judgment likewise failed to expressly link the twelve months of home confinement to a particular count. However, the court's statements throughout the hearing depicted the year of home confinement as one of two alternative punishments for the drug crime. Indeed, the government points out that "the record makes clear that the district court imposed this condition as the 'quid pro quo' for a zero-month sentence on Count 3." Within this context, we think the only fair reading of the sentencing is that the district court improperly tethered the home-confinement condition to the impermissible term of supervised release on Count III.

The government argues that even if the condition was wrongly linked to Count III, Lopez-Pastrana neither deserves nor needs a remedy. Any such error would be harmless, the government maintains, because the district court had authority to impose home detention as a substitute for imprisonment on Count III pursuant to 18 U.S.C. § 3563(b)(19). That assertion is incorrect. Section 3563(b)(19) specifies home detention as one of the discretionary conditions that may be imposed as part of a sentence of probation. However, Lopez-Pastrana's Presentence Investigation Report states that he was ineligible for probation on Count III because he was sentenced at the same time to a term of imprisonment for Count IV.

See 18 U.S.C. § 3561(a)(3).[6]   Although a separate statutory provision permits courts to impose most of the conditions listed in § 3563(b) in the context of supervised release, see 18 U.S.C. § 3583(d), the problem here is that supervised release itself was impermissible based on the zero months' imprisonment imposed on Count III.

The government's other harmless-error rationale has a stronger foundation.  The district court directed that the improper term of supervised release for Count III run concurrently with the authorized term of supervised release for Count IV.  Hence, the court could have accomplished its apparent objective by ordering one year of home detention as a condition of supervised release on the firearms count.  In addition, apart from harmless error, the government points out that Lopez-Pastrana has not made the correct claim of error on appeal -- i.e., that supervised release on Count

---

[6] Federal law permits probation or a fine as alternatives to imprisonment for persons found guilty of an offense, see 18 U.S.C. § 3551(b), although the "choice among [the] three alternative punishments" may be limited by specific provisions, United States v. Martin, 363 F.3d 25, 35 (1st Cir. 2004). For example, a defendant found guilty of a Class A felony is not eligible for probation, see 18 U.S.C. § 3561(a)(1), and probation also is unavailable if "the defendant is sentenced at the same time to a term of imprisonment for the same or a different offense that is not a petty offense," id. § 3561(a)(3).   See also U.S.S.G. § 5B1.1(b) (stating that a sentence of probation is not authorized if, inter alia, "the defendant is sentenced at the same time to a sentence of imprisonment for the same or a different offense, 18 U.S.C. § 3561(a)(3)").

III was impermissible -- and instead has complained only that the district court did not adequately explain its "departure or variance from the otherwise applicable guideline imprisonment range."

There is some force to the government's position that no remedy is needed for the district court's error. Nonetheless, despite its view that we should affirm Lopez-Pastrana's sentence as is, the government stated in its brief and at oral argument that it did not oppose a limited remand directing the district court to reconsider the home detention condition and to ensure that, if retained, the condition is imposed properly. We believe a remand is the best course in the circumstances of this case. Not only did the district court clearly err by imposing supervised release on Count III, but the court also began the sentencing hearing with the incorrect view that the zero months' sentence was a beneficial variance for the defendant and "below what he agreed." As described in Section I, the government subsequently clarified that zero months was within the guidelines range. Yet, the court's initial misunderstanding may have affected the quid pro quo it offered to Lopez-Pastrana and its decision to impose home detention. That is, the option of home confinement for a term twice as long as the high end of the guidelines range may have been influenced by the court's incorrect belief that the zero-months' sentence was a generous variance from the range.

We thus conclude that the most equitable approach is the limited remand accepted by the government so that the district court may correct the conceded error in imposing supervised release on Count III. See 28 U.S.C. § 2106 (stating the authority of appellate courts to order a remand and "require such further proceedings to be had as may be just under the circumstances"). Accordingly, we need not proceed to the third and fourth steps of the plain error inquiry.

Although we express no view as to the proper sentence to be imposed on remand, we offer two observations. First, as defense counsel acknowledged at oral argument, the district court's reconsideration of the home detention condition could result in a term of imprisonment on Count III. However, the defendant represents that his health remains problematic, and the court may properly consider any change in his condition that occurred during the nearly three years since his original sentencing. See Pepper v. United States, 562 U.S. 476, 481 (2011) (holding that "a district court at resentencing may consider evidence of the defendant's postsentencing rehabilitation"); id. at 491 (noting generally that the same types of information about a defendant are relevant at both the "initial sentencing and a subsequent resentencing after a prior sentence has been set aside on appeal"); United States v. Bryson, 229 F.3d 425, 426 (2d Cir. 2000) (per curiam) (noting that "a court's duty is always to sentence the

defendant as he stands before the court on the day of sentencing" (quoted in Pepper, 562 U.S. at 492)). Moreover, the government indicated at oral argument that, if we remanded for resentencing, it did not plan to seek imprisonment time for Count III.

Second, the district court will have flexibility in reconsidering the erroneous term of supervised release and home detention. The district court could limit the resentencing to Count III, now understanding that any period of supervised release on that count, and any condition of supervised release -- including home detention -- must be linked to a period of imprisonment. However, the government also has emphasized the availability of home confinement as a condition of supervised release on Count IV. We see no reason why the district court should be foreclosed from reinstating home detention in that way -- i.e., by retaining the zero months' sentence on Count III, eliminating the improper term of supervised release on that count, and imposing home confinement as part of the sentence on Count IV. Although the government may not have anticipated the effect of that approach on the scope of the remand, correcting the error in that way would necessarily broaden the resentencing to both counts and require a determination that home confinement is an appropriate "alternative to incarceration" on Count IV. 18 U.S.C. § 3583(e)(4).[7]

---

[7] Relatedly, we note that the proceedings on remand may be affected by the outcome of appellant's request, in December 2015,

- 20 -

## III.

We thus vacate the sentence imposed on Count III and remand this case to the district court for resentencing consistent with the discussion above.  The court also may revisit the sentence on Count IV for the purpose we have described.[8]

So ordered.

---

that the Bureau of Prisons ("BOP") file a motion requesting his compassionate release.  See 18 U.S.C. § 3582(c)(1)(A)(i) (allowing a court to reduce a term of imprisonment, upon motion of the BOP director, based on a finding that "extraordinary and compelling reasons warrant such a reduction"); 28 C.F.R. § 571.60-63 (specifying procedures for initiating a request under § 3582(c)(1)(A)).  At oral argument in March 2018, Lopez-Pastrana's counsel reported that the request to the BOP remained pending.  The remand proceedings ordered herein could become superfluous if the BOP submits, and the district court grants, a motion under § 3582(c)(1)(A).

[8] In a pro se filing, Lopez-Pastrana raises nineteen largely undeveloped additional claims of error affecting both his conviction and sentence.  He challenges, inter alia, the validity of the search of his home that led to his arrest and the legality of the drug charges brought against him.  He also asserts multiple instances of ineffective assistance of counsel.  Most of these claims are either waived or premature.  Having entered an unconditional guilty plea, appellant may not seek to undo his conviction based on errors that occurred before his plea.  See Tollett v. Henderson, 411 U.S. 258, 267 (1973); United States v. Castro-Vazquez, 802 F.3d 28, 32-33 (1st Cir. 2015).  Nor may we entertain fact-bound claims of attorney ineffectiveness on direct appeal.  See, e.g., Castro-Vazquez, 802 F.3d at 33.  The remainder of the pro se claims are either plainly without merit or insufficiently developed to permit meaningful review.